483 So.2d 908 (1986)
Mrs. Edith Margaret Granier SIMONEAUX, Widow of Richard J. Simoneaux, Sr., Individually, and as Natural Tutrix and Administratrix of the Estates of the Minors, Richard J. Simoneaux, Jr. and Marcy Margaret Simoneaux
v.
E.I. DU PONT DE NEMOURS AND COMPANY, INC. and William D. Cobb.
Mrs. Patricia Donahue McCORMICK, Widow of Ralph H. McCormick, Individually, and as Natural Tutrix and Administratrix of the Estates of the Minors, Brian Patrick McCormick and Todd Hamilton McCormick
v.
E.I. DU PONT DE NEMOURS AND COMPANY, INC. and William D. Cobb.
No. 85-C-0489.
Supreme Court of Louisiana.
February 24, 1986.
Rehearing Denied March 20, 1986.
*909 Harry McCall, Jr., L. Harvard Scott, III, Chaffe, McCall, Phillips, Toler & Sarpy, for defendant-applicant.
Virgil M. Wheeler, Jr., Antonio E. Papale, Jr., Hailey, McNamara, Hall, Larmann & Papale, for plaintiff-respondent.
DIXON, Chief Justice.
These consolidated cases present the question whether a petition generally alleging a cause of action under the intentional act exception to the Louisiana Worker's Compensation Laws can be dismissed on a motion for summary judgment, before the plaintiff has been allowed to conduct discovery.
These cases were brought by the widows and survivors of two workmen who were injured in an explosion at the E.I. du Pont de Nemours and Company Pontchartrain Works in St. John the Baptist Parish. The incident occurred during the afternoon of July 12, 1983 in the area of the chloroprene producing unit. Both men were seriously burned and died several weeks later. On September 23, 1983 the first suit was brought against du Pont and William D. Cobb, the plant manager.
The petition alleged that the cause of the explosion was "the continued operation of said unit at improper and unsafe temperatures and subsequent to numerous episodes of serious malfunctions, with the full and actual knowledge and belief that the resulting explosion, fire, injury and death were certain, or substantially certain, to follow and/or result from their continued operation of the chloroprene production unit."
In the next paragraph, plaintiff alleged that defendants were "in actual possession of detailed information regarding the hazards to life and limb inherent in the design, manufacture, assembly, maintenance and operation of the said chloroprene production unit, including actual malfunctions thereof, and, further, defendants fully and actually knew and believed that its continued operation was certain, or substantially certain, to result in the explosion, fire, injury and death which, in fact, occurred, and, yet, notwithstanding such actual knowledge and belief, intentionally and deliberately went ahead with the continued operation of said unit."
The other suit (Simoneaux) was filed on December 12, 1983, with similar allegations. The suits were consolidated.
On December 20, 1983 plaintiffs filed a discovery request styled "First Request for Production of Documents and Things." This five page document sought production of a considerable amount of information relevant to the accident at the chloroprene unit and the negligence of the company in operating the unit.
du Pont filed answers on December 28, 1983, denying that it intended the harm visited upon the plaintiffs. On January 5, 1984 du Pont moved for a summary judgment on the grounds that defendants did not intend the explosion and that the plaintiffs' exclusive remedy was in workers' compensation. Also filed was the affidavit of William Cobb, the du Pont plant manager. Cobb explained that:
"1. I am now, and since 1 June 1983 have been, Plant Manager at E.I. duPont de Nemours and Company's (hereinafter `du Pont'), Pontchartrain Works near Reserve, Louisiana; from January 1981 to 1 June 1983, I was Assistant Manager. I have personal knowledge of the matters set forth in this this (sic) affidavit, and am authorized to make it and make it on the basis of personal knowledge.
2. The basic process of manufacturing chloroprene (hereinafter `CD') has been known to the scientific community generally and CD has been produced by du Pont and other chemical companies for approximately fifty (50) years; du Pont *910 has manufactured CD at its Pontchartrain Works near Reserve, Louisiana for approximately thirteen (13) years.
3. On 29 June 1983, certain modifications in the CD manufacturing process were put into effect at du Pont's Pontchartrain Works, the purpose of which was to improve the efficiency of the operation by minimizing the loss of raw material and use of energy.
4. Prior to implementing these modifications, as is its consistent practice, du Pont, through its Technical and Production Groups, carefully and thoroughly considered whether they would create or affect any safety hazard to its employees, to members of the public or to any part of or location within the plant in order to eliminate entirely or at least minimize any such hazard.
5. The conclusion reached by these Groups was that putting the modifications proposed into effect would not create any hazard or have any adverse effect on the safety of employees or others; as Assistant Plant Manager and in the discharge of my responsibility for safety at the Pontchartrain Works, I personally reviewed the report of these Groups and accepted their conclusions that no safety hazard would be created by or any adverse effect on the safety of employees or others would result from implementation of these modifications.
6. In particular, I asked for a review of the process safety features of the manufacturing process as modified in a way that covered prior test work and similar modifications at other du Pont sites; upon conclusion of this review, it was my considered opinion that putting the proposed modifications into effect would not create or increase any safety hazard.
7. Consistent with du Pont's standard practice to insure, as far as possible, against occurrence of any unforeseen accident or other untoward occurrence, I authorized provision for and institution of round-the-clock monitoring procedures to make certain that any problem or unforeseen complication in the functioning of the process would be promptly observed and corrected.
8. Subsequent to implementation of the modifications specified in paragraph three (3) hereinabove, there were minor functional difficulties in elements of the chloroprene production unit of the nature and to the extent normally experienced in start-up operations of chemical processes generally, but at no time were there any malfunctions or problems which might suggest a belief that the explosion which occurred on 12 July 1983 was certain to, substantially certain to or even might occur.
9. I have read the petitions in both of these cases (McCormick and Simoneaux), and particularly paragraphs XI and XII thereof; contrary to the allegations of these paragraphs,
(a) At no time prior to occurrence of the explosion on 12 July 1983 was there any evidence that the design, manufacture, assembly, maintenance or operation of the chloroprene unit at du Pont's Pontchartrain Works was improper, inadequate, unsafe or defective, and
(b) Although there were brief and intermittent episodes of operation at a temperature lower than that prescribed incident to starting or stopping the process, the consequence of such operation was inefficient functioning of the unit in that product was not processed, but there was no problem or indication of any safety hazard and no reason to believe that a safety hazard was thereby created.
10. From the time of implementation of the modifications to the process of producing chloroprene at du Pont's Pontchartrain Works on 29 June 1983 and at all times up to and including the date of the explosion herein at issue, I did not believe nor did I or anyone else at the Pontchartrain Works have any reason to believe that an explosion such as that which occurred on 12 July 1983 was certain to, was substantially certain to, or even might occur."
The plaintiffs responded with a second request for production of documents and things, this time tailored to the functioning *911 of the chloroprene unit. Approximately a week later, on February 2, 1984, the plaintiffs filed a motion to compel discovery. The next day the plaintiffs filed with the court a twenty-two page document styled "First Set of Interrogatories." This document contained forty-two questions, many with subparts, and questioned almost every aspect of the functioning of the chloroprene unit, the circumstances surrounding the explosion and several topics covered in William Cobb's affidavit.
On February 6, 1984 the plaintiffs filed several more documents. In a motion to strike the plaintiffs asked the court to throw out the affidavit of William Cobb because it was improper in form and substance. Two affidavits were filedone by plaintiffs' attorneys and one plaintiff and one by plaintiffs' attorneys. These affidavits contained conclusory statements contending that material issues of fact remained.[1]
*912 Judgment was rendered on March 5, 1984 granting the summary judgment in favor of the defendants, declaring that there were no genuine issues of material fact and the remaining motions were moot. The trial judge found that the plaintiffs failed to show an intentional tort.
The court of appeal, 464 So.2d 826, reversed the trial court and denied the motion for summary judgment because the plaintiffs had "been completely denied the opportunity for discovery," and because defendant's affidavit was insufficient to "lay to rest all of the genuine issues of material fact." We granted certiorari to review the appropriateness of the court of appeal decision. 466 So.2d 1294 (La.1985).
Summary judgment is an appropriate method for disposing of a case wherein intent is a critical question. Mayer v. Valentine Sugars, Inc., 444 So.2d 618, 620 (La.1984); see also Mashburn v. Collin, 355 So.2d 879, 890 (La.1977).
A summary judgment should be granted when it is clear there exists no genuine issue of material fact and that the mover is entitled to the judgment as a matter of law. C.C.P. 966. A motion for summary judgment may be made at any time and can be based on the pleadings, affidavits, depositions, answers to interrogatories and admissions then on file. Id. Affidavits must be made on personal knowledge and set forth only facts admissible in evidence, and must show that the affiant is competent to testify to the matters contained within the affidavit. C.C.P. 967.
There is no absolute right to delay action on a motion for summary judgment until discovery is completed. Under C.C.P. 967, a trial judge clearly has the discretion to issue a summary judgment after the filing of affidavits, or the judge may allow further affidavits or discovery to take place.

*913 "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or by further affidavits.
When a motion for summary judgment is made and supported as provided above, an adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him.
If it appears from the affidavits of a party opposing the motion that for reasons stated he cannot present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.
..." C.C.P. 967.
The only requirement is that the parties be given a fair opportunity to present their claim. Unless plaintiff shows a probable injustice a suit should not be delayed pending discovery when it appears at an early stage that there is no genuine issue of fact.
It is true, as the plaintiffs contend, that C.C.P. 856 provides that intent need only be alleged generally and is an exception to the general rule that a pleading must set forth the facts upon which it is based. As such, the plaintiffs' allegations that the defendants knew and believed the catastrophe would occur were well pleaded facts, Mayer v. Valentine Sugars, Inc., supra at 620, even though they were conclusory statements, raising the issue of an intentional tort. The defendants responded with an affidavit that specifically rebutted the charge that du Pont officials intended or knew to a substantial certainty that the explosion would occur. When a motion for a summary judgment has been filed and supported by evidence, the adverse party may no longer rely on the mere allegations or denials of his pleading, but through affidavits or otherwise must set forth evidence demonstrating there is a genuine issue for trial. The plaintiffs' response to the du Pont affidavit, through affidavits of their own, did little more than argue that questions of fact existed. No further facts surrounding the du Pont officials' knowledge were alleged.
When the evidence submitted on the motion leaves no relevant, genuine issue of fact, and when reasonable minds must inevitably conclude that the mover is entitled to judgment on the facts before the court, a motion for summary judgment should be granted. Cates v. Beauregard Electric Cooperative, Inc., 328 So.2d 367, 370 (La. 1976), cert. denied, 429 U.S. 833, 97 S.Ct. 97, 50 L.Ed.2d 98 (1976). In this case, based only on conclusory statements of the plaintiffs, to find that genuine issues of fact remained, reasonable minds would have to find that du Pont officials intended or knew to a substantial certainty that the chloroprene unit would explode and cause serious harm. This is not a reasonable conclusion.
Accordingly, the judgment of the court of appeal is reversed and the judgment of the district court is reinstated at respondents' cost.
LEMMON, J., dissents and assigns reasons.
LEMMON, Justice, dissenting.
In Mayer v. Valentine, 430 So.2d 1068 (La.App. 4th Cir.1983), this court held essentially that when the plaintiff in a tort action based on an intentional act of his employer or a co-employee alleges generally that the actor should have known or believed that the injurious consequences *914 were substantially certain to follow from his act, the petition sufficiently states a cause of action. The effect of that decision was to relegate defendants seeking pretrial dismissal of the action to use of a motion for summary judgment, on which each party is entitled to submit affidavits, depositions, answers to interrogatories and other such evidence.
I voted to grant a rehearing in Mayer, along with the two dissenting justices, to reconsider the decision, because the intentional act exception to the exclusive remedy provisions of the workmen's compensation act, as interpreted by this court in Bazley v. Tortorich, 397 So.2d 475 (La.1981), applies so rarely and infrequently that the defendants in an action based on something apparently less than a genuine intentional act should be entitled to dismissal at the earliest possible stage of the proceedings. I voted to grant certiorari in the present case for the same reasons. On reconsideration, however, I have now concluded that when the dispute involves a condition of mind such as knowledge, intent or malice and the decision therefore turns on a question of degree which must be inferred from the entirety of the circumstances, the issue simply should not be decided on the pleadings, no matter how slight the apparent possibility of ultimate success.
Defendants in the present case followed Mayer and moved for a summary judgment, attaching an affidavit by the plant manager that he did not have any reason to believe an explosion was substantially certain to result from the modifications in the chloroprene unit and its operation under the existing circumstances. Plaintiffs attempted discovery in order to determine all of the circumstances surrounding the explosion, as well as the extent of the previous problems with chloroprene units. Because the distinction between an act of gross negligence and an intentional act is a matter of degree, the trial judge abused his discretion in not permitting any discovery whatsoever.[1] If the discovery requests were too broad, the trial judge could have imposed appropriate limitations.
The real problem in the present case is that a plaintiff in an industrial accident case will almost never prevail on the merits under this court's strict interpretation of the term "intentional act" in the Bazley decision, which required a genuine intentional tort and rejected an expansive interpretation which would have included constructive intent. There has never been a reported decision of a successful action based on an intentional act in an industrial explosion or fire case because it is almost impossible to prove that supervisory personnel either desired to bring about the explosion and fire or acted under circumstances in which a reasonable person should have known that the explosion and fire were substantially certain to occur as a result of this act. Nevertheless, if supervisory personnel, perhaps because of severe economic stress, operate a plant unit at certain temperatures for a certain period of time with the knowledge that an untoward event had occurred every time this type of unit had been operated at that temperature for that length of time, then the supervisors arguably knew that the consequences were substantially certain to follow, although they did not desire the consequences.[2]
*915 This type of situation, as previously stated, will almost never occur (and for that reason the filings of this type of action will eventually dwindle, as long as this court maintains its interpretation of the intentional act exception). Nevertheless, because the issue is one of degree and all of the facts bearing on the issue are within the defendants' knowledge, plaintiffs should be afforded an opportunity for at least a minimum amount of discovery. The high likelihood that the action will eventually be unsuccessful should not be a reason for granting a summary judgment without affording plaintiffs an opportunity to discover the basic pertinent facts that are solely within the defendants' knowledge.
NOTES
[1] "BEFORE ME, the undersigned Notary Public, duly commissioned and qualified in and for the Parish of Jefferson, State of Louisiana, personally came and appeared:

VIRGIL M. WHEELER, JR. and ANTONIO E. PAPALE, JR. and MRS. EDITH MARGARET GRANIER SIMONEAUX
who, after first by me being duly sworn, did depose and say:
That Mrs. Edith Margaret Granier Simoneaux is one of the plaintiffs in the above entitled and numbered consolidated actions, wherein she is represented by her co-affiants, Virgil M. Wheeler, Jr., and Antonio E. Papale, Jr.;
That the explosion and fire which occurred at the Pontchartrain Works of E.I. Dupont De Nemours & Co., Inc., the occurrence of which resulted in injuries to and the eventual death of decedents, Ralph H. McCormick and Richard J. Simoneaux, Sr., occurred after and as a direct result of the operation of DuPont's chloroprene production unit at improper and unsafe temperatures and numerous episodes of serious malfunctions, with the full and actual knowledge on the part of DuPont and its officers, agents and employees, including, but not being limited to, William D. Cobb, that the resulting explosion, fire, injuries and deaths were certain, or substantially certain, to follow and/or result from such operation of said unit and that, notwithstanding such knowledge and belief, said unit was intentionally and deliberately continued in operation under such circumstances;
That they have read the Affidavit of William D. Cobb, which was submitted by defendants in support of their Motion for Summary Judgment and that some of the contents of said Affidavit confirm the aforesaid knowledge of affiants and that there exists substantial issues of material fact on the record of these consolidated actions, as presently constituted, which preclude a determination that defendants are entitled to judgment in their favor as a matter of law;
That, responses to written discovery requests heretofore filed in these consolidated actions and subsequent discovery, including depositions to be taken hereinafter, shall substantiate the allegations, all and singular, of plaintiffs in these consolidated actions and further demonstrate the existence of genuine issues of material fact precluding summary disposition of these actions, or either of them, in favor of defendants and, accordingly, that such discovery is necessary and appropriate; and
That this Affidavit is being made in conjunction with plaintiffs' opposition to defendants' Motion for Summary Judgment heretofore filed in these consolidated proceedings."
"BEFORE ME, the undersigned Notary Public, duly commissioned and qualified in and for the Parish of Jefferson, State of Louisiana, personally came and appeared:
VIRGIL M. WHEELER, JR. and ANTONIO E. PAPALE, JR.
who, after first being duly sworn, did depose and say:
That they are co-counsel of record for plaintiffs in the above entitled and numbered consolidated actions, namely Mrs. Patricia Donahue McCormick and Mrs. Edith Margaret Granier Simoneaux;
That as the records in the above entitled and numbered consolidated actions will disclose, they filed Petitions for Damages on behalf of plaintiffs in their individual and representative capacities on September 23, 1983 (McCormick) and December 12, 1983, (Simoneaux);
That they caused to be filed on behalf of said plaintiffs a First Request for Production of Documents and Things on December 20, 1983;
That, after having been granted an informal extension of time within which to file responsive pleadings, defendants, E.I. DuPont De Nemours & Co., Inc. and William D. Cobb, filed Answers in these consolidated proceedings on December 27, 1983;
That instead of filing discovery responses which would have been due by January 5, 1984, defendants, in these consolidated actions, filed Motions for Protective Orders, seeking to thwart or substantially hinder plaintiffs' discovery, and Motions for Summary Judgment;
That on behalf of plaintiffs in these consolidated actions they caused a Second Request for Production of Documents and Things to be filed in these consolidated proceedings on January 24, 1984;
That on or about February 2, 1984, they caused to be filed on behalf of plaintiffs a Motion to Compel Discovery with reference to prior discovery requests filed on behalf of plaintiffs;
That on or about February 2, 1984, they caused to be filed on behalf of plaintiff, Mrs. Patricia Donahue McCormick, a Supplemental and Amended Petition seeking damages on behalf of the posthumous child of decedent, Ralph H. McCormick;
That on February 3, 1984, they caused to be filed on behalf of plaintiffs in the above entitled and numbered consolidated actions a First Set of Interrogatories;
That they have caused all of the aforesaid discovery-related pleadings to be served upon defendants contemporaneously with the filing thereof into the record of these consolidated actions;
That as of the date upon which this Affidavit is subscribed, they have received, in their capacity as counsel for plaintiffs in these consolidated actions, no response whatsoever from defendants in connection with any of the discovery pleadings described hereinabove;
That it is impossible for plaintiffs, through them as counsel of record, to file of record in these consolidated actions Affidavits reciting with particularity specific facts for the purpose of countervailing the Affidavit of William D. Cobb, submitted by defendants in support of their Motion for Summary Judgment, in opposition to said Motion;
That they have exercised due diligence in the filing and prosecution of these consolidated actions with respect to injuries which occurred on July 12, 1983 and death resulting therefrom in the instance of decedent, McCormick, on August 17, 1983, and in the instance of decedent, Simoneaux, on August 12, 1983 and in seeking discovery as recited hereinabove;
That the instrumentalities, documents and information relating to the explosion and fire of July 12, 1983 and/or the causes thereof are in the exclusive possession and control of defendants;
That, while the Affidavit of William D. Cobb submitted by defendants in support of their Motion for Summary Judgment discloses on its face the existence of genuine issues of material fact precluding the granting of Summary Judgment in these consolidated actions, nevertheless, said Affidavit in and of itself suggests the necessity and appropriateness of substantial discovery, including without limitation, the discovery heretofore propounded by plaintiffs to defendants;
That once defendants file and are compelled to file responses to plaintiffs' written discovery, plaintiffs intend to embark upon a course of deposition-taking of persons and/or entities as may be necessary and/or appropriate in the prosecution of these consolidated actions and their preparation for trial on the merits; and
That the continuance of defendants' Motion for Summary Judgment indefinitely, pending completion of discovery, is in the interest of justice and within the exercise of the sound discretion granted this Court by Article 967 of the Louisiana Code of Civil Procedure, if not inferentially mandated by the provisions of Article 1602 of the Louisiana Code of Civil Procedure."
[1] Intent in the context of a tort action based on an intentional act has reference to the consequences of the act rather than to the act itself. Bazley v. Tortorich, above; W. Prosser & P. Keeton, Law of Torts § 8 (5th ed.1984). It is the belief of a reasonable person in the actor's position as the certainty of the consequences which makes the act intentional. Any degree of probability less than substantial certainty reduces the character of the act from intentional to grossly negligent. Restatement (Second) of Torts § 8A (1965). An act with mere knowledge and understanding of an appreciable risk is therefore not an intentional act, although it may be a negligent act and even a grossly negligent one. Thus, the distinction between intent and negligence is a matter of degree, and intent is present when the known danger is more than a foreseeable risk, but is in the mind of the actor a substantial certainty. W. Prosser & P. Keeton, above.
[2] The allegations of the petition hint at such a situation in this case. Only after minimal discovery will plaintiffs develop the necessary information (if it exists) or will defendants show that there is no genuine issue of material fact and that they are entitled to summary judgment as a matter of law.