STOKER, Judge.
This is an appeal from a summary judgment in an intentional tort suit. The plaintiffs are an employee and his wife, and the defendants are the employer and its insurer and two co-employees. Plaintiff was injured within the course and scope of his employment when he fell from a defective ladder. The ladder was bent, was missing a rung and had badly worn skid pads. Plaintiffs filed suit against defendants alleging that defendants knew or believed plaintiff’s injuries were substantially certain to result when they ordered plaintiff, under compulsion of job loss, to use the obviously defective ladder. Defendants contend that plaintiff decided to use the ladder of his own volition, no one intended for him to be injured and that plaintiffs’ sole remedy is in worker’s compensation. The trial court granted defendants’ motion for summary judgment. Plaintiffs appeal this judgment, assigning as its sole assignment of error the following:
“The trial court erred in finding that defendants had discharged their burden of showing that there is no genuine issue with respect to the material fact of whether defendants must have believed and known that injury was substantially certain to result from their actions and instructions to Mr. Hare.”
In order to avoid the general rule that an employee’s exclusive remedy for a job-related injury is worker’s compensation, the employee must prove that the injury resulted from an intentional tort. Mayer v. Valentine Sugars, Inc., 444 So.2d 618 (La. 1984). Plaintiff’s petition alleges an intentional tort.
REQUIREMENTS FOR SUMMARY JUDGMENT
The nature of the summary judgment device and the requirements for obtaining relief through a motion for summary judgment are so well established that extensive discussion of this procedural form is not necessary. See the discussion of principles in Watson v. Cook, 427 So.2d 1312, 1315, 1316 (La.App. 2d 1983). Our Supreme Court summarized in Mayer v. Valentine Sugars, Inc., supra. The court stated that LSA-C.C.P. art. 966 “permits a party to pierce the allegations-of fact in the pleadings and to obtain relief by summary judgment where facts set forth in detail in affidavits, depositions, answers to interrogatories, and admissions omissions on file show that there are no genuine issues of material fact to be tried.” In the same case the Supreme Court set forth the burden of proof of a plaintiff in prosecuting an intentional tort cause of action. It said:
“In order to succeed, [the plaintiff] must still prove that the person who acted either (1) consciously desired the physical results of his act or (2) knew that that result was substantially certain to follow from his conduct.”
As authority, the court cited Bazley v. Tortorich, 397 So.2d 475 (La.1981).
Bearing in mind that an intentional tort may be shown by either conscious desire or *724 knowledge of certainty of result, we must test whether summary judgment is appropriate in this case at the stage of the proceedings.
PLAINTIFFS’ POSITION
The plaintiffs state their position in their brief as follows:
“Defendants’ liability is predicated on their ‘intentional act’ of ordering Mr. HARE, under compulsion of job loss, to use an obviously defective ladder in carrying out his job duties, where defendants knew or were substantially certain that Mr. HARE would be injured in doing so.”
The employees of Ganaway Construction. Company referred to are Vincent Viscosi and C.V. “Skip” Farrow.
DEFENDANTS’ POSITION
The defendants’ motion for summary judgment was supported by annexed affidavits of Viscosi and Farrow containing these averments:
“(1) At the date and time specified in the Petition, Hare was injured in the course and scope of his employment;
(2) They personally did not in any form or fashion, order or direct Hare to undertake any activity which resulted in his alleged injuries;
(3) They never entertained any active desire or intention that Hare injure himself; and
(4) They did not personally direct or otherwise request that Hare undertake any action where they entertained any notion or thought that injury to Hare was substantially certain to follow.”
CONSCIOUS DESIRE
Aside from the averments of Viscosi and Farrow that they never had any active desire or intention that Hare injure himself, defendants rely on Hare’s own answers to questions posed in his deposition. Hare agreed that neither Viscosi or Farrow intended for him to be injured. In this connection, consider Simoneaux v. E.I. du Pont de, Nemours, 483 So.2d 908 (La.1986) and Fabre v. Kaiser Aluminum & Chemical Corp., 499 So.2d 1239 (La.App. 4th Cir.1986).[1] We pretermit the interesting ques *725 tion as to whether these statements, purporting to negative a conscious desire that Hare suffer hurt, are sufficient to show there was no genuine issue of fact. Should we conclude that they were, such a conclusion does not eliminate the necessity of testing the summary judgment remedy against the other possible ground.
RESULT SUBSTANTIALLY CERTAIN TO FOLLOW
Defendants are not entitled to summary judgment if there is genuine issue of material fact as to whether defendants knew (assuming they ordered plaintiff to use the ladder or knew it would be used) that use of the ladder in question would occasion accident and injury and was a result substantially certain to follow. We are unable to conclude there is no genuine issue of material fact.
We conclude that there is a genuine issue of fact as to whether Ganaway’s employees ordered plaintiff to use the ladder in question. This issue presents a credibility question which is not appropriate for decision on a motion for summary judgment. Watson v. Cook, supra; Hemphill v. Strain, 341 So.2d 1186 (La.App. 1st Cir.1976), writ denied, 343 So.2d 1072 (La.1977), appeal after remand, 371 So.2d 1179, writ denied, 373 So.2d 510 (La.1979); Mecom v. Mobil Oil Corp., 299 So.2d 380 (La.App. 3d Cir.), writ denied, 302 So.2d 308 (La.1974); Lachney v. Employers Cas. Co., 281 So.2d 761 (La.App. 3d Cir.1973). Along with this question, the trier of fact must determine whether the condition of the ladder was such that the defendant would know with substantial certainty that use by the plaintiff would result in an accident.
The affidavits and deposition of the plaintiff disclose matters appropriate only for a trial on the merits where the trier of fact can apply the evidentiary rule of determining what is more probable than not. This rule is not appropriate for summary judgment decisions. Watson v. Cook, supra; Mecom v. Mobil Oil Corp., supra. The jurisprudence further establishes that the mover bears the burden of establishing the absence of genuine issue of material fact, and where the facts present a choice of reasonable inferences, they must be viewed in the light most favorable to the party opposing the motion. Watson v. Cook, supra.
Aside from the affidavits purporting to negate intent, the defendants rely upon answers of plaintiff, Frank S. Hare, given in a deposition. The pertinent portions of the deposition are as follows:
“Q Did you ever hear anyone on the job say not to use that ladder?
“A No.
“Q What was your impression of that ladder in terms of safety?
“A I had made remarks about it wasn’t safe.
“Q Who did you remark to?
“A To Skip.
“Q How long had you been there when you told Skip you thought it was unsafe?
“A Probably the second day.
“Q What did he tell you?
“A He said that’s all we have, to use it and be careful.
“Q So you told him that you thought it was unsafe?
“A Yes, sir.
“Q Did you use the ladder after you told him it was unsafe?
“A I had no other choice.
“Q By no other choice, what do you mean?
“A There’s nothing else there to work with. It’s more or less left up to either use it or get on the road.
“Q Did Skip tell you that?
“A No. Not in so many words.
“Q Well, tell me in -not so many words how he conveyed that to you?
“A We were told to do our job and get it done and no standing around or worrying about anything. Just get the job done.
*726 “Q Well, correct me if I’m wrong. Is what you’re telling me that you felt like you had to climb up on that ladder or you wouldn’t have a job?
“A That’s right.
“Q But Skip never told you that?
“A No. Not directly.
“Q He never even told you indirectly. Isn’t that right?
“A He told me to use the ladder. It was there, use it but be careful.
“Q But he never told you that if you didn’t use the ladder you wouldn’t have a job?
“A No. He did not.
“Q Did you make any remarks there about the safety of that ladder?
“A Morris Garvis.
“Q What did you tell Morris?
“A That it was unsafe and to watch it when he used it.
“Q Was this before or after you talked to Skip?
■ “A After.
“Q What did Morris respond?
“A He said he knew it.
“Q But he said he was going to use it anyway or what did he say?
“A There was no other way of getting on top of those roofs without that ladder.”
* * * * * *
“Q Did anyone come to you and tell you that they thought that ladder was unsafe?
“A No.
“Q After this conversation you had with Skip about the safety of the ladder and the one you had with Morris about the safety of the ladder, did you tell anyone else that you may have had some thoughts about the safety of this ladder?
“A I had mentioned it to Vinney.
“Q Vinney Viscosi?
“A Yes.
“Q What position did Vinney have out on the job?
“A He was the superintendent.
“Q He was over Skip?
“A Yes.
“Q And what did Vinney tell you about the ladder?
“A He had made a comment about they should go down and rent a set of ladders.
“Q He said that to you? He said we ought to go out and rent a good set of ladders?
“A Yes. But until then, use this one and be careful with it.
“Q And you continued to use the ladder after you spoke with Vinney?
“A Yes.
“Q How long did you speak — how long was it before you spoke to Vinney after your conversations with Skip and Morris?
“A He had seen me go up onto the roof with that ladder and he told me [to] be careful.
“Q After all three of these conversations, though, you continued to use the ladder?
“A Yes.
“Q The ladder that you were injured with that was on the job site, do you know who owned that ladder?
“A No. I don’t.
“Q Was it owned by Ganaway?
“A I don’t believe it was.
“Q How do you know it was not owned by Ganaway?
“A Vinney and Skip had made a comment that it was left there by other construction people.
“Q Did they also comment to you that you should not use that ladder in any circumstances?
“A No. They did not.
“Q Did they specifically instruct you that [you] should use that ladder in your work?
“A Not specifically. They told us to use it but to be careful.
“Q Well, if they told you to use it and be careful with it, then they specifically told you to use it. Is that your testimony?
*727 “A I guess.
“Q Well, I don’t want you to guess. I want you to listen to my question and answer it. My question is did Skip or Viscosi tell you to use that ladder in the work that you were doing for Ganaway Construction Company?
“A Yes. They did.”
* * * * * *
“Q Do you think he [Viscosi] would have wanted you to injure yourself?
“A No. I don’t.”
* * * * * *
“Q And you knew when you climbed up on this ladder that this ladder was in fact defective. Isn’t that correct?
“A Yes, sir.
“Q And you did that anyway?
“A Yes.
“Q You had a choice, didn’t you, sir?
“A Yes.
“Q No one held a gun to your head for you to use that ladder, did they?
“A No.”
* * sjt * $ ⅜:
“Q Did Viscosi know what ladder you were going to choose to do this job when you went to use it?
“A Yes. He seen me take it.
“Q Did you at that time tell him, look, we need another ladder because this ladder is unsafe?
“A No.
“Q You made the decision to use the ladder. Is that correct?
“A The ladder was already up against the wall where Joe — a fellow by the name of Joe had already gotten off the roof by this ladder so I took the ladder and went on the job.
“Q No one instructed you to use that specific ladder for the purpose of the job you did. Is that correct?
“A It’s the only ladder we had.
“Q Didn’t you say you had some other stepladders?
“A A stepladder would not reach that high.
“Q Didn’t you say that you had a long wooden ladder?
“A Yes. I did.
“Q Couldn’t you have used that ladder?
“A Not by myself. No.
“Q Could you have requested — did you request any assistance from Vince to use that ladder?
“A No. Because that particular ladder was too tall to be able to fit without it laying down on a 45 degree angle.
“Q So in regard to the decision of using the ladder, you made that decision?
“A It’s the only ladder we had.
“Q But you made the decision to use it, didn’t you?
“A Yes. I guess so.”
* * ⅜ * * *
“RECROSS EXAMINATION BY MR. GACHASSIN:
“Q I have two other questions. Do you think that Skip at any time intended for you to be injured at this job site?
“A No.
“Q Do you think that Vince Viscosi ever intended for you to be injured at this job site?
“A No.”
CONCLUSION
In Jordan v. Travelers Insurance Company, 245 So.2d 151 (La.1971) the Louisiana Supreme Court stated:
“... [P]roof by direct or circumstantial evidence is sufficient to constitute a preponderance, when, taking the evidence as a whole, such proof shows, that the fact or causation sought to be proved is more probable than not.”
This “more probable than not” standard is not available in motion for summary judgment cases. If the evidence shown in affidavits, depositions, answers to interrogatories or admissions disclose any genuine issues of material fact, summary judgment is *728 not appropriate regardless of the probabilities.
In this case we find that there are issues at least as to whether the defendants or defendants’ representatives instructed (or requested) plaintiff to use the ladder in question, and if they did so, whether they knew plaintiffs accident was substantially certain to follow from his use of the ladder.
For the foregoing reasons, the judgment of the trial court granting the motion for summary judgment is reversed; the motion for summary judgment is denied and the case is remanded to the district court for further proceedings. The costs of this appeal and those incurred in connection with the motion for summary judgment are assessed to appellees.
REVERSED AND REMANDED.

. In Simoneaux v. E.I. du Pont de Nemours, 483 So.2d 908 (La.1986), the Louisiana Supreme Court (with one dissent) accepted the averments contained in a plant manager’s affidavit as sufficient to negate allegations of a petition charging an intentional tort. Two workmen were killed in a plant explosion. The manager’s affidavit was not a simple denial of intent on anyone’s part. Rather, the affidavit was extensive and set forth the manufacturer's concern regarding implementation of certain plant operations. The affidavit further referred to careful consideration given to any affect on safety hazard and reviews of process safety features. The Supreme Court concluded that reasonable minds could not conclude that du Pont officials intended or knew, with substantial certainty, that the plant unit in question would explode and cause serious harm. The defendants’ motion for summary judgment was granted.
In the course of the Simoneaux opinion the Supreme Court stated that summary judgment "is an appropriate method of disposing of a case wherein intent is a critical question. The Supreme Court cited Mayer v. Valentine Sugars, Inc., 444 So.2d 618, 620 (La.1984) and Mashburn v. Collin, 355 So.2d 879 (La.1977).
The Court of Appeal for the Fourth Circuit followed Simoneaux in Fabre v. Kaiser Aluminum & Chemical Corp., 499 So.2d 1239 (La.App. 4th Cir.1986). There the plaintiff argued that intent is a state of mind and not the proper subject for resolution by affidavits of those whose intentions are at issue. The First Circuit held otherwise, citing Simoneaux v. E.I. du Pont de Nemours, supra.
Earlier cases may be found in which courts of appeal held that a summary judgment is not appropriate when it is based upon affidavits and accompanying pleadings and other documentary evidence to establish subjective facts such as motive, intent, good faith or knowledge. Ortego v. Ortego, 425 So.2d 1292 (La.App. 3d Cir.1982), writ denied, 429 So.2d 147 (La.1983); Mecom v. Mobil Oil Corp., 299 So.2d 380 (La.App. 3d Cir.), writ denied, 302 So.2d 308 (La.1974); Fontenot v. Aetna Insurance Company, 225 So.2d 648 (La. App. 3d Cir.1969); Watson v. Cook, 427 So.2d 1312 (La.App. 2d Cir.1983). See also Jefferson Parish School Bd. v. Rowley Company, Inc., 305 So.2d 658 (La.App. 4th Cir.1974) and Butler v. Travelers Ins. Co., 233 So.2d 271 (La.App. 1st Cir.1970).
Perhaps any apparent conflict in these two lines of cases can be resolved by focusing on the meaning of appropriate. If affidavits and other documentary evidence disclose objective facts, summary judgment might be appropriate, but if a pure subjective state of mind is in contention, *725 summary judgment might be inappropriate. We do not attempt a resolution in this case.