667 So.2d 1133 (1995)
Lisa FERGUSON & Greg LaCour, Plaintiffs-Appellees
v.
Carl JOINER, Defendant-Appellant.
No. 95-924.
Court of Appeal of Louisiana, Third Circuit.
December 13, 1995.
Rehearing Denied March 5, 1996.
*1134 Glen D. Vamvoras, Lake Charles, Eric Miller, Luling, for Lisa Ferguson and Greg LaCour.
Terrence Kent Knister, New Orleans, for Carl Joiner.
Before DOUCET, C.J., and COOKS and PETERS, JJ.
COOKS, Judge.
The employer-sponsor of a retirement plan qualified under ERISA appeals a judgment in favor of former employee-participants in the plan. For the following reasons we reverse and remand.

FACTS
The defendant, Carl Joiner, was vice-President of Meyer, Joiner & Associates. This company was later renamed Joiner-Meyer Partnership, Inc. (Joiner-Meyer), and Joiner became the president. Meyer, Joiner & Associates sponsored a pension plan, the Meyer Group Employees Retirement Plan, that was qualified under the Employee Retirement Income Security Act of 1974 (ERISA). 29 U.S.C. § 1001 et seq and 26 U.S.C. § 401 et seq. Lisa Ferguson and Greg LaCour, plaintiffs, were employed by Joiner-Meyer and were participants in the plan. They left Joiner-Meyer in November 1986 and March 1988 respectively. At the time of their departures, the only contributions to their retirement account had been made by their employer.
The plan provided:
In the event of a Participant's Termination of Employment prior to his Retirement Date, he shall be entitled to his Vested Account, which shall be nonforfeitable and held by the Trustee to be distributed only for the benefit of the Participant, or his Beneficiary in accordance with Section 7.01.
. . . .
Any balance remaining in the Participant's Employer Contribution Account which is not vested shall be forfeited on the date the Participant incurs a Break in Service.
When Ferguson and LaCour left the company, they received checks representing their vested interests in their accounts. In accordance with the vesting schedule for employer contributions outlined in the retirement plan, Ferguson was 60% vested and LaCour was 50% vested at the time of their *1135 departures from Joiner-Meyer. In accordance with the terms of the retirement plan, Eads General Trust, the company that administered the retirement plan, held Ferguson's and LaCour's non-vested interests in a suspense account when they left Joiner-Meyer. The plan provided that if they were to resume employment within five years, their non-vested interests would be restored.
In April 1989, Joiner terminated the retirement plan. At the time of the termination, he was the only remaining participant in the plan. Eads advised Joiner that the termination may have caused Ferguson and LaCour to become entitled to the non-vested portion of the retirement account and urged him to seek the advice of an attorney. Joiner asserted Ferguson and LaCour were not entitled to receive anything because they had received their vested interests in their retirement accounts when they left Joiner-Meyer. He accepted the remaining sum in the retirement plan since he was 100% vested and was the sole participant in the plan.
The parties agreed to submit the case to the trial judge on the record, which contained an affidavit by Joiner and his deposition. In the affidavit, Joiner attested to the dates Ferguson and LaCour left Joiner-Meyer; the fact that they had received their vested interest in their retirement account; and that they received the payments for their interest before the plan was terminated.
The trial judge requested that the parties supplement the record with the reasons why Ferguson and LaCour left Joiner-Meyer and provide the total membership in the plan on the date each plaintiff left. Ferguson responded with an affidavit stating she was Joiner's administrative assistant until Joiner-Meyer moved its principal place of business from Lake Charles, Louisiana, to Kingwood, Texas. Ferguson trained the newly hired Kingwood-based administrative assistant to handle matters that arose in Kingwood and Lake Charles. Thereafter, Ferguson's position in Lake Charles was downgraded to a part-time job, and she began to look for a full-time position. LaCour did not submit an affidavit attesting to the reason why he left Joiner-Meyer. Joiner, however, testified during his deposition that LaCour left because business was slowing down.
Paree Prejean submitted an affidavit stating she was employed with Meyer & Associates, Inc. and as controller was familiar with the Joiner-Meyer pension plan. She stated "upon dissolving common ownership with the companies, the only participants in the pension plan ... were Lisa Ferguson, Carl A. Joiner and Greg LaCour." Ferguson declared in her affidavit that she believed she and LaCour were the only participants in the pension plan for three reasons:
1. A conversation with Paree Prejean in September of 1990 regarding additional moneys, which according to her were, "for you and Greg LaCour."
2. A conversation with Mr. Jim McCown, Eads Administrator, who told me that Greg and I were the only employees receiving additional moneys.
3. After reviewing all pension plan paperwork filed in the Sulphur office of "The Meyer Group", I found that the only persons who sent the "Participant's Consent to Single Sum" forms and the only ones discussed in several letters from Eads to Paree Prejean and Eads to Carl A. Joiner were Greg LaCour and myself.
Relying on Weil v. Retirement Plan Administrative Committee, 933 F.2d 106 (2d Cir.1991), the trial judge ruled a partial termination pursuant to 26 U.S.C. § 411(d)(3) occurred when Ferguson and LaCour left Joiner-Meyer. The court in Weil, 933 F.2d 106 followed the Internal Revenue Service's definition of a partial termination, i.e., a significant reduction in the number of vested and non-vested plan participants. The court concluded terminating 33.4% of the plan participants constituted a significant reduction in the number of participants. Accordingly, it held there was a partial termination.
In the case before us, the trial judge found Ferguson's departure decreased the number of plan participants by 33%. As a result, the trial judge concluded a partial termination occurred when Ferguson left Joiner-Meyer because there were only two participants remaining with the plan. When LaCour left, only one member remained in the plan, Joiner. The partial termination, the trial court *1136 held, caused the plaintiffs to become fully vested in their accounts. Therefore, they were entitled to receive the non-vested portions of their retirement accounts. The trial judge ordered Joiner to pay Ferguson and LaCour the amount of their non-vested sums.
Joiner filed a motion for a new trial contending the judgment was contrary to the evidence. He noted a letter from Eads dated September 28, 1988 referred to a refund of retirement benefits to four members of the plan, Gregory LaCour, Roland A. Manuel, Thomas Talbot and Walter Barowka. Since he was also a member of the plan, Joiner concluded there were at least five members in addition to Ferguson when she left the company. He also noted there was no evidence submitted to support a finding that he and LaCour were the only participants in the plan when LaCour left Joiner-Meyer. Joiner asserted Ferguson's affidavit contains inadmissible hearsay. He further complained that he was not able to cross-examine Prejean about the information in her affidavit. Joiner's motion was denied, and he raises the same issues on appeal.

DISCUSSION
The Employee Retirement Income Security Act (ERISA) was enacted in part to prevent employees and their beneficiaries from being deprived of anticipated benefits in the event their retirement plan is terminated. 29 U.S.C. § 1001(a).
In the case of a defined benefit plan, accrued benefits are usually determined by years of service and the amount of accrued compensation is expressed as a percentage. 29 U.S.C. § 1002(35); Ronald J. Cooke, ERISA Practice and Procedure 4-66 (1994). An employee's right to accrued benefits derived from his or her own contributions to a retirement plan is nonforfeitable at all times. See ERISA 29 U.S.C. § 203(a); 26 U.S.C. § 411(a)(1). An employee's right to his or her accrued benefits derived from employer contributions need only satisfy the minimum vesting schedule set forth in 26 U.S.C. § 411(a)(2). Thus, the provisions of the plan which state that an employee forfeits his or her non-vested, employer contributions is permitted by statutes.
However, when an employer voluntarily terminates a single-employer defined benefit plan, all accrued benefits automatically vest, notwithstanding the plan's particular vesting provisions. 26 U.S.C. § 411(d)(3). Similarly, if there is a partial termination of the plan, all accrued benefits automatically vest. Id.[1]
To determine whether a partial termination has occurred, all the facts and circumstances of the case must be considered, including the exclusion by reason of plan amendment or severance by the employer of a group of employees who have been previously covered by the plan. 26 C.F.R. § 1.411(d)-2(b). The jurisprudence suggests that partial terminations occur when: (1) a substantial reduction in plan participants is attributable to "involuntary exclusions" or "employee terminations," Sage v. Automation, Inc. Pension Plan & Trust, 845 F.2d 885, 891 (10th Cir.1988); and (2) an employer-initiated permanent reduction of a significant percentage of employees from a plan occurs as part of a major corporate event, Weil v. Retirement Plan Admin. Committee, 750 F.2d 10 (1984); In re Gulf Pension Litigation, 764 F.Supp. 1149 (S.D.Tex.1991). Voluntary employee decisions to leave the employer do not constitute partial plan terminations. Kreis v. Charles O. Townley, M.D. & Assoc., P.C., 833 F.2d 74 (6th Cir. 1987). However, in Revenue Ruling 730284, 1973-2 C.B. 139, the Internal Revenue Service found that employees who were discharged after refusing employer's offer to transfer to employer's new business location 100 miles away triggered a partial termination. The IRS reasoned the change in business location effectively excluded a significant *1137 percentage of the employees from participating in the plan. The court in Morales v. Pan American Life Ins. Co., 914 F.2d 83 (5th Cir.1990) included among those employees involuntarily "terminated" as a result of a business closing, the employees who resigned prior to the closing, inferring they did not "voluntarily" leave their jobs even if they found other employment before the closing.
Upon their departure, Ferguson and LaCour received their vested benefits under the plan. They had not made any contributions to the plan, which would have been non-forfeitable under any circumstance. Ferguson and LaCour received their vested interests in the employer's contributions, which were less than 100%, when they left Joiner-Meyer. The remaining question, whether they are entitled to the non-vested portion due to a partial termination, cannot be answered with the record we have before us.
Generally, an affidavit is inadmissible as hearsay. Frazier v. Green Steel Building, Inc., 409 So.2d 1290 (La.App. 2 Cir.1982). Furthermore, even in rare instances where acceptable as a substitute for testimony, an affidavit must be based on personal knowledge, must set forth only facts admissible in evidence, and must show that the affiant is competent to testify to the matters contained therein. See La.Code Evid. art. 602; La.Code Civ.P. Art. 967; Simoneaux v. E.I. du Pont De Nemours & Co. Inc., 483 So.2d 908 (La.1986). Ferguson's affidavit contains hearsay and does not show that she had personal knowledge of the number of participants in the plan at the time of her departure.
Prejean claims to have personal knowledge of the number of participants in the plan, but she did not state how many were in the plan at the time of Ferguson's and LaCour's departures. She stated in her affidavit, "upon dissolving common ownership with the companies, the only participants in the pension plan ... were Lisa Ferguson, Carl A. Joiner and Greg LaCour." It cannot be determined from the record what the phrase "upon dissolving common ownership with the companies" means. Nor does her affidavit reveal the number of participants when Ferguson left in November 1986 or when LaCour left in March 1988. The number of participants in the plan could have increased after the "dissolution" but prior to Ferguson's or LaCour's departure.
The evidence before the trial judge was inadequate to determine whether a partial termination occurred. The number of participants in the plan when Ferguson and LaCour left was not adequately proven. Additionally, while some evidence exists, though sketchy and weak in value, to show Ferguson's and LaCour's departure from the company may not have been voluntary, still the record as a whole is not sufficient even on this issue. An appellate court is given the power to remand an action for proper consideration when the record is so incomplete that the court is unable to pronounce definitively on the issues presented or where the parties have failed, for whatever reason, to produce available evidence material to a proper decision. Bodin v. Bodin, 392 So.2d 759 (La. App. 3 Cir.1980). It is fair and logically consistent with existing jurisprudence to remand this case for submission of additional competent evidence by the parties material to the issues raised. La.Code Civ.P. arts. 2132 and 2161.
Accordingly, the judgment of the trial court is reversed, and this matter is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
NOTES
[1] 26 U.S.C. 411(d)(3) provides in pertinent part:

Termination or partial termination; discontinuance of contributions.
Notwithstanding the provisions of subsection (a), a trust shall not constitute a qualified trust under section 401(a) unless the plan of which such trust is a part provides that
(A) upon its termination or partial termination, ...
the rights of all affected employees to benefits accrued to the date of such termination, partial termination, or discontinuance, to the extent funded as of such date, or the amounts credited to the employees' accounts, are nonforfeitable.....