MICHAEL GLASS

VERSUS

LOWE'S HOME CENTER, INC.

**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 2
PARISH OF RAPIDES, NO. 09-05918
JAMES L. BRADDOCK, WORKERS' COMPENSATION JUDGE

**********

SHANNON J. GREMILLION
JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Shannon J. Gremillion, and David E. Chatelain,[*] Judges.

Thibodeaux, Chief Judge, concurs in the result and assigns written reasons.

REVERSED AND REMANDED.

Patrick Fox Robinson
Taylor, Wellons, Politz & Duhe
7924 Wrenwood Blvd., Suite C
Baton Rouge, LA 70809
(225) 387-9888
Counsel for Defendant/Appellant:
Lowe's Home Center, Inc.

Candace Wells-Losavio
Losavio Law Office, LLC
P. O. Box 12420
Alexandria, LA 71315-2420
(318) 767-9033
Counsel for Plaintiff/Appellee:
Michael Glass

---

[*] Honorable David E. Chatelain participates as Judge Pro Tempore by appointment of the Louisiana Supreme Court.

**GREMILLION, Judge.**

Defendant/appellant, Lowe's Home Center, Inc. (Lowe's), appeals summary judgment in favor of plaintiff/appellee, Michael Glass, awarding him medical expenses relating to his left knee and lower back, mileage, temporary total disability indemnity, penalties of $4,000, and attorney fees of $5,500. Glass answers the appeal, seeking additional attorney fees for defending the appeal. We reverse and remand for further proceedings.

## FACTS

On July 16, 2009, Glass filed a Disputed Claim for Compensation with the Office of Workers' Compensation in which he asserted that he injured his back and knee on April 24, 2009 and May 19, 2009. Specifically, plaintiff alleged that:

> On 4/24/09, claimant was standing, operating a forklift that moves merchandise from shelves to the floor, when he injured his left knee and low back as he was lifting a dishwasher off an upper shelf onto the forklift platform. On 5/19/09, claimant aggravated his previous back injury of 4/24/09 while performing job related activities.

Lowe's filed responsive pleadings on August 6, 2009. On September 21, 2009, Glass filed a First Amending and Supplemental Petition, alleging his entitlement to reimbursement for mileage and unpaid medical expenses, as well as attorney fees and penalties. That same date, he also filed a motion for summary judgment.

Glass's motion for summary judgment was accompanied by his affidavit, certified copies of medical records from Christus St. Francis Cabrini Hospital, uncertified medical records of Dr. James Wallace, certified medical records from Leglue Physical Medicine Clinic, the affidavit of Dr. Gerald Leglue, Jr., and the affidavit of Glass's attorney attesting to her timed devoted to his representation.

The hearing on the motion for summary judgment was fixed for October 5,

1

2009, by order of the Workers' Compensation Judge (WCJ) dated September 22, 2009.

On September 24, 2009, Glass filed a motion seeking leave of the WCJ to propound written discovery in excess of the limits imposed by La.Code Civ.P. art. 1457(B). Leave of court was granted that day.

The hearing on Glass's motion for summary judgment was refixed in open court on October 5, 2009, for October 19, 2009. On October 8, 2009, the WCJ signed the order refixing the motion for summary judgment for hearing on October 19, 2009. That order also fixed for hearing on the same day a motion by Glass to compel responses to discovery.

Lowe's filed its opposition to the motion for summary judgment on October 16, 2009. In its opposition, Lowe's maintained that summary judgment was not ripe because additional discovery was needed and that a genuine issue of material fact existed given Glass's statement to the personnel at Christus St. Francis Cabrini Hospital that he did not recall any on-the-job accident but awoke on May 19 in pain. Lowe's also isolated several other references from medical records that it contended created genuine issues of material fact with regard to the causal relationship between the events of the two dates in question and the conditions for which Glass sought treatment. To its opposition, Lowe's annexed certified copies of the medical records generated by Mid-State Orthopaedic and Sports Medicine Center of Alexandria and Louisiana Physical Therapy Centers of Pineville.

Glass responded to Lowe's opposition, asserting that it should not be considered by the WCJ as it was not timely filed in accordance with La.Code Civ.P. art. 966(B) and Uniform Rules—District Courts, Rule 9.9, both of which require the

2

opposition be served at least eight days prior to the date of hearing.

The hearing on Glass's motions was held on October 19 as ordered. At the hearing, Glass reiterated his objection to the opposition filed by Lowe's. However, Lowe's sought to introduce the records of Mid-State Orthopaedic and Louisiana Physical Therapy. Glass's counsel was specifically asked whether she objected to the introduction, which she declined to do, given that the records were certified. It is not clear from the WCJ's ruling from the bench whether he was allowing the filing of the opposition or was simply allowing Lowe's counsel the opportunity to present oral argument;[1] however, the introduction of the certified medical records without objection rendered Glass's opposition to the late filing moot.

The WCJ ruled from the bench that, the medical records of Christus St. Francis Cabrini Hospital notwithstanding, he found no genuine issue of material fact for trial, as the medical records of Dr. Rajinder Verma, a physician in Ball, Louisiana, to whom Glass had been referred by Lowe's, documented that Glass complained of pain in his low back and knee on April 24, 2009. It is again unclear from the WCJ's ruling whether he even considered the opposition filed by Lowe's because at one point he states, "That's not the case here, we have no opposition, we have no opposing medical information whatsoever. We have no factual information from the employer to oppose the evidence presented on behalf of Mr. Glass in support of the Motion for Summary Judgment." The summary judgment was granted.

## ASSIGNMENTS OF ERROR

Lowe's assigns the following errors:

---

[1] There was apparently considerable confusion at the commencement of the hearing. The WCJ had brought to the bench exhibits that he had already reviewed. Those were removed from the bench by someone, and new copies had to be made by the WCJ's staff.

3

A.   The trial judge committed manifest error in finding that there are no genuine issues of material fact;

B.   The trial judge committed manifest error in granting summary judgment without allowing the defendant "adequate discovery" as required under [La.Code Civ.P.] art. 966;

C.   The trial judge committed legal error in granting summary judgment before Lowe's answered the plaintiff's "First Amending and Supplemental Petition."

## ANALYSIS

An appellate court reviews a grant of summary judgment de novo, applying the same standards as would a trial court. *Schroeder v. Bd. of Sup'rs of La. State Univ.*, 591 So.2d 342 (La.1991). Summary judgment is governed by La.Code Civ.P. arts. 966 and 967. Article 966, as amended by Act 483 of 1997, provides that while the burden of proving entitlement to summary judgment rests with the mover, if the mover will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential facts of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. *Hardy v. Bowie*, 98-2821 (La. 9/8/99), 744 So. 2d 606. A fact is "material" if it potentially ensures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of a legal dispute. *Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512 (La. 7/5/94), 639 So.2d 730. A genuine issue is one on which reasonable persons could disagree. *Id.* Thus, it is only when, based upon the evidence presented, reasonable persons could reach but one conclusion that summary

4

judgment is appropriate. *Id.*

The recovery of benefits in workers' compensation for personal injury is predicated upon a finding that the employee has received personal injury by accident arising out of and in the course and scope of his employment. La.R.S. 23:1031(A). An "accident" is defined as, "an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration." La.R.S. 23:1021(1).

Applying the precepts of La.Code Civ.P. art. 966 to the requirements of La.R.S. 23:1031, it is incumbent upon the court to find that no reasonable person could disagree that Glass was injured in an unexpected, unforeseen actual, precipitous event happening suddenly or violently that directly produced at the time objective findings of an injury that is more than simply a gradual deterioration or progressive degeneration. *Smith*, 639 So.2d 730. To determine this, we look to the admissible evidence presented in support of and in opposition to Glass's motion.

Glass presented to Dr. Verma on April 24, 2009, complaining that he injured his left knee and low back at work. Dr. Verma found effusion (fluid on his knee), tenderness, and swelling in Glass's left knee. Effusion and swelling both represent findings that an independent observer could detect without any response from the claimant. They are, therefore, objective findings of injury. On his only follow-up visit with Glass, Dr. Verma found that Glass's knee and back were either improved or improving and returned Glass to work effective May 6, 2009.[2]

---

[2] It is not possible to tell from the record whether Dr. Verma found that Glass had improved or was improving. We find this distinction important, given the fact that Glass alleges he had two accidents.

Glass did return to work, according to his affidavit. However, "on May 19, 2009, while performing regular job duties," Glass attested that his back and knee pain increased. The record discloses no attempt by Glass to seek medical attention until May 26, 2009, when he presented to the emergency room at Christus St. Francis Cabrini Hospital in Alexandria. The hosptial's intake data sheet indicates that Glass stated his back had been hurting for four days, that he was unsure about having sustained an injury, and that he awoke in pain. Radiographic studies of Glass's back and knee were ordered. The back studies showed rather advanced multilevel degenerative changes, most severe at the L4-5 and L5-S1 levels. Glass had mild spondylolisthesis at the L4-5 of seven to eight millimeters. At the T12 level, Glass demonstrated evidence of an old compression fracture of the vertebra. The knee study showed moderate degenerative changes and spurring about the knee cap. There was no joint effusion or fracture.

Glass returned to the hospital on May 29, 2009, for MRI studies of his back and knee. The knee study revealed a degenerative tear of the medial meniscus, a partial tear of the popliteus tendon, a partial tear of the proximal fibular collateral ligament, chronic-appearing patellar and quadriceps tendonitis, "chronic signal" in the mid portion of the posterior cruciate ligament, fairly advanced degenerative changes in the medial joint compartment with chondromalacia, variances in the medial knee soft tissues, and a ganglion cyst about the proximal tibiofibular joint. The study of Glass's back revealed either an extruded disc fragment or a Schwannoma or neurofibroma of the nerve that appeared to displace the thecal sac at the L3-4 level; a mild broad-based disc bulge at the same level with moderately severe degenerative facet arthropathy and bilateral foraminal stenosis; a moderate

6

disc bulge at L4-5 with severe degenerative arthropathy; and a mild to moderate disc bulge and protrusion with moderate to severe bilateral facet arthropathy.

Thereafter, Glass saw his primary care physician, Dr. James Wallace. Shortly thereafter, Glass came under the care of Dr. Gerald Leglue, a physical medicine and rehabilitation specialist in Alexandria. Dr. Leglue obtained an extensive personal history from Glass on a pre-generated form that Glass completed by hand. In response to the question, "How long have you had back pain?" Glass responded, "From 4/24/09." Glass's further responses indicate that his knee and back improved slightly. He did inform Dr. Leglue that he had attempted to return to work but that his knee and back pain had gotten worse. Dr. Leglue attested in his affidavit that, in his opinion, Glass's low back and knee injuries were causally related to the April 24, 2009 accident.

Based upon the evidence presented, we find that reasonable minds could differ over whether there is a causal relationship between the April 24, 2009 accident and Glass's complaints after May 19, 2009. Following the April 24 accident, Glass gave a detailed description of the manner in which he was injured. He was treated and released to return to work. When he presented to the emergency room on May 26, a full week after he maintained that he re-injured or aggravated his knee and back, Glass reported that he did not recall any injury but woke up in pain four days earlier (which also conflicts with his claim of having aggravated his conditions on May 19). His objective findings after May 19 all appear to represent degenerative conditions except the possibility of ligament damage to the left knee. We are unable to determine from the record whether the left knee conditions are related to April 24's events, May 19's events, or are degenerative in nature. Lastly, when Glass did relate

7

May 19's events both in his affidavit and elsewhere, he merely described them in the nebulous terms of, "while performing job related activities." No more detailed descriptions have been provided in the record.

In the context of a trial, "findings based on determinations regarding the credibility of witnesses" demand "great deference to the trier of fact's findings." *Bruno v. Harbert Int'l, Inc.*, 593 So.2d 357, 361 (La.1992), quoting *Rosell v. Esco*, 549 So.2d 840, 844 (La.1989). "[O]nly the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said." *Id.* In the context of summary judgment, though, such findings based upon credibility are afforded no deference whatsoever, because such findings have no place in summary judgment. The trier of fact's task in deciding summary judgment is solely to determine whether there exists a genuine issue of material fact. "A fact is 'at issue' if there exists any reasonable doubt as to its existence." *Dinger v. Shea*, 96-448, p. 4 (La.App. 3 Cir. 12/11/96), 685 So.2d 485, 488.

When faced with internally inconsistent accounts of a claimant's medical history that directly bear upon two elements of a workers' compensation claim, 1) the occurrence of an "accident," and 2) the causal relationship between the accident and the injuries sustained, a WCJ who grants summary judgment is necessarily making a credibility determination. Such a determination cannot survive review on appeal.

In our view, there exist material issues of fact regarding: 1) whether Glass had recovered from the April 24 incident, in which case any injuries from the May 19 incident must be shown to have resulted from an "accident" on May 19 or at some other time; 2) whether Glass was involved in an unwitnessed "accident" on May 19

8

or at some other time; and 3) whether Glass's conditions represent injuries that are more than simply gradual deterioration or progressive degeneration. In light of these considerations, the WCJ erred in granting Glass's motion for summary judgment.

The decision to allow a party additional time for discovery before entertaining a motion for summary judgment lies within the discretion of the trial court and will not be reversed absent a showing that the trial court abused that discretion in not allowing additional time. *Simoneaux v. E.I. duPont de Nemours and Co., Inc.*, 483 So.2d 908 (La.1986). Given our finding that the WCJ erred in granting summary judgment because of the existence of genuine issues of material facts, we need not address whether the WCJ abused his discretion in refusing defendant additional time.

We also note that the motion was heard before Lowe's filed an answer to Glass's First Supplemental and Amending Petition. Louisiana Code of Civil Procedure article 966(A)(1) provides that a plaintiff's motion for summary judgment may be filed any time after the answer has been filed. It was improper for the motion for summary judgment to have been heard prior to Lowe's filing an answer. And, we note, the requirement that a motion for summary judgment only be filed after answer is quite logical, because before an answer is filed, a plaintiff's opportunity to obtain an expedited ruling on the merits is to obtain a default judgment.

## CONCLUSION

The Workers' Compensation Judge's grant of summary judgment in favor of plaintiff/appellee, Michael Glass, is reversed. Genuine issues of material fact exist as to the occurrence of a May 19, 2009 accident and any causal relationship between said accident and his complaints. Further, the motion should not have been heard prior to Lowe's filing responsive pleadings to Glass's First Supplemental and

9

Amending Petition. Appellee is cast with all costs of this appeal, and his demand for additional attorney fees related to this appeal is denied.

**REVERSED.**

MICHAEL GLASS

VERSUS

LOWE'S HOME CENTER, INC.

**THIBODEAUX, Chief Judge, concurring.**

I concur in reversing the judgment of the trial court only because La.Code Civ.P. art. 966 (A)(1) requires the submission of an answer prior to the plaintiff's motion being made. Our jurisprudence is replete with cases demonstrating that this is mandatory.

I disagree with the majority concerning the existence of genuine issues of material facts. The claimant, as the moving party, carried his burden in demonstrating a prima facie case on the occurrence of the accident and causation. The defendant, as the trial court observed, submitted no factual or opposing medical evidence whatsoever. None. Pointing to inconsistencies in the medical records and in the plaintiff's narrative do not amount to the creation of genuine issues of material facts. No reasonable person could conclude that the defendant could carry its burden of lack of causation at trial.

I reluctantly agree to reversal because of the procedural posture of this case.