MARC E. JOHNSON, Judge.
I ¿This is a mass tort suit involving a 1998 chemical gas release. This appeal involves a flight of ten plaintiffs who proceeded to trial together. Defendants, Evans Harvey Corp. and its insurer Lexington Ins. Co., appeal the trial court’s October 22, 2013 judgment, finding Evans Harvey Corp. liable to Plaintiffs for damages sustained as a result of exposure to the chemical gas and awarding general damages to each of the plaintiffs in amounts ranging from $2,500 to $13,500. For the reasons that follow, we affirm.

PROCEDURAL HISTORY

On April 1, 1998, Plaintiff, Donald Brown, individually and on behalf of others similarly situated, filed a class action petition against Defendant, Evans Harvey Corp. (“Evans Harvey”), for damages sustained from exposure to a chemical gas leak that occurred on the morning of March 31, 1998 at Defendant’s facility in Harvey. In a second supplemental and amending petition, it was alleged that various chemicals, including benzene, styrene, methylene chloride, toluene, | sand xylene, which were known carcinogens, were released during the leak. Over time, additional plaintiffs were added to the lawsuit, and other plaintiffs filed their own lawsuits. In November 1999, the plaintiffs were certified as a class and the lawsuits were ultimately consolidated; however, in January 2003, the class was decertified.
As a result of the decertification, Plaintiffs filed a third supplemental and amending petition in March 2006, re-naming and adding plaintiffs for a total of 63 plaintiffs claiming damages as a result of the exposure." Plaintiffs further added Lexington Insurance Company, Evans Harvey’s general liability insurer, as a defendant.
The parties agreed to try the case in flights. The first flight, involving ten plaintiffs,[1] was tried before the trial judge on July 22 and 23, 2013 and August 5, 2013. The trial was bifurcated with damages being tried first on July 22nd and 23rd and liability being tried on August 5th. On August 30, 2013, the trial court rendered judgment finding Evans Harvey liable to Plaintiffs for damages caused by the March 31, 1998 chemical release from its facility. It awarded various amounts to each Plaintiff ranging from $2,500 to $13,500, plus unspecified special damages and outstanding liens. Four days later, on September 3, 2013, the trial court amended its judgment to award damages to three Plaintiffs omitted from the August 30, 2013 judgment.
Defendants subsequently filed a motion to annul the amended judgment and a motion for new trial. Defendants claimed the amended judgment was an absolute *248 nullity because it made substantive amendments to the judgment by awarding damages to three additional plaintiffs, and asserted that the proper procedure for |4correcting the judgment was a new trial. The trial court agreed, annulled the September 3, 2013 amended judgment, and granted a new trial. On October 22, 2013, the trial court rendered judgment on the new trial, again finding Evans Harvey liable for damages caused by the chemical release and awarding damages to each of the ten Plaintiffs in amounts ranging from $2,500 to $13,500. The trial court further specified special damages for two of the Plaintiffs, Mr. Leglue and Mr. Rojas, in the amounts of $10,868.67 and $6,142.55, respectively, based on the parties’ stipulations of the amount of workers’ compensation benefits paid to each. Defendants, Evans Harvey and Lexington Ins. Co., appeal this judgment.

FACTS

On the morning of March 31,1998, there was a chemical release from Evans Harvey’s drum reconditioning unit at its facility on Peters Rd. in Harvey, Louisiana. The release occurred when Evans Harvey was installing a baghouse and lime injection system on the drum furnace to control emissions. During the process, pressure in the ventilation system caused the oven furnace to emit smoke. It was believed that the emission contained hydrogen chloride and hydrogen sulfide. Evans Harvey estimated the chemicals were emitted for approximately ten minutes before the unit was shut down. Evans Harvey. subsequently notified the Louisiana Department of Environmental Quality, which responded to the scene.
Nearby workers at Ocean Technical Services (OTECH), C & C Marine, and Dynamic Industries reported seeing a yellowish cloud coming from the Evans Harvey yard shortly after beginning their 7:00 a.m. shifts. As the cloud descended upon the area, the workers began experiencing various symptoms including burning eyes, burning and itchy throat, bitter or metallic taste, itchy skin and nausea. Some workers began vomiting. The work yards were evacuated and the | r,workers were moved to an area across the street. The cloud, which dissipated to a whitish-gray mist, remained in the area between 20-45 minutes.
A medical bus from West Jefferson Medical Center arrived at the scene at approximately 9:00 a.m. with Dr. Garrett Tucker, who is board certified in occupational medicine, and several nurses and respiratory therapists. The medical personnel examined over 100 workers from nearby businesses, whose main complaints were eye, throat and skin irritation with some complaints of nausea and weakness. Five or six workers were immediately sent to the hospital for evaluation, while the remaining workers were evaluated on site by Dr. Tucker. Dr. Tucker examined approximately 118 people and determined that all of their symptoms were consistent with chemical exposure. Dr.' Tucker treated the workers with Visine for the eye irritation and told them to drink Gatorade for the nausea and use lotion for the skin irritation. The majority of the workers were also seen by an eye doctor the next day, who prescribed an eye moisturizer for the eye irritation.
Of the ten Plaintiffs involved in this appeal, seven (Steven Grass, Donald Brown, Jose Portillo, Jay Brugger, Line Leglue, John Caminita and Steve Rojas) were workers at either OTECH, C & C Marine or Dynamic Industries and three (Susie Davis, Rose Harris and Lionel Bib-bins) were visitors to the nearby businesses. Of the seven workers, four (Grass, Brugger, Leglue and Caminita) were *249 treated at West Jefferson Medical Center and three (Brown, Portillo and Rojas) were treated on site. Two of the workers (Leglue and Rojas) continued to treat with doctors several times after the exposure. The three visitors self-treated with over-the-counter medication and were never examined by a doctor.

\JSSUES

On appeal, Defendants challenge the trial court’s finding of liability and the amount of damages awarded. Defendants first contend the trial court erred in finding Plaintiffs carried their burden of proving causation. They maintain there was no evidence that Plaintiffs were exposed to any particular chemical, for any particular period of time, and at any particular dose: in other words, there was no scientific evidence showing exposure levels sufficient to cause the injuries alleged. As such, Defendants argue that Plaintiffs failed to prove that it was more probable than not that their injuries were caused by the exposure. Defendants next assert the damage awards are not supported by the evidence and are excessive.

DISCUSSION

Liability

In a tort case, the plaintiff has the burden of proving every essential element of his case (negligence, cause and injury) by a preponderance of the evidence. Laska v. Olin Corp., 625 So.2d 1002, 1005 (La.1993). Whether direct or circumstantial, evidence is sufficient to constitute a preponderance when taking the evidence as a whole, the fact sought to be proved is more probable than not. Id. If the evidence is circumstantial, it must, taken as a whole, exclude every other reasonable hypothesis with a fair amount of certainty — it need not negate all other possible causes. Wisner v. Illinois C.G. Railroad, 537 So.2d 740, 745 (La.App. 1st Cir.1988), writ denied, 540 So.2d 342 (La.1989), citing Lacey v. Louisiana Coca-Cola Bottling Co., Ltd., 452 So.2d 162, 164 (La.1984).
To prove a causal relationship between the tortious conduct and subsequent injuries a plaintiff must show through medical testimony that it was more probable than not that the subsequent injuries were caused by the accident. Arabie v. CITGO Petroleum Corp., 10-2605 (La.3/13/12); 89 So.3d 307, 321. Causation is [7a factual finding that should not be reversed on appeal absent manifest error. Detraz v. Lee, 05-1263 (La.1/17/07); 950 So.2d 557, 561. Thus, the trial court’s factual finding regarding causation should not be disturbed unless there is no reasonable basis for that finding in the record and it is clearly wrong. Id.
Defendants challenge the trial court’s finding that Plaintiffs’ injuries . were caused by the chemical gas leak. They contend there was no scientific evidence that Plaintiffs were actually exposed to any particular chemical or were exposed to a dose sufficient to cause injury. Defendants acknowledge Arabie, supra, wherein the supreme court found that such scientific evidence is not required, but maintain scientific evidence is critical in this case where the magnitude of exposure is not evident.
Arabie was a chemical exposure case wherein plaintiffs, who were workers at a nearby refinery, alleged they suffered various injuries after being exposed to noxious gases emanating from an oil spill caused by the defendant. The defendant admitted liability for the spill and agreed to pay damages for injuries proximately caused by the spill. The trial court found that plaintiffs proved their injuries were more likely than not cause by the spill. The defendant appealed, challenging the trial *250 court’s finding of causation. The defendant argued that the plaintiffs failed to prove exposure levels sufficient to cause the injuries alleged by means of scientific evidence. Arabie, 89 So.3d at 321.
The supreme court noted that the material safety data sheet (MSDS) listed the various chemicals in the “slop oil” and stated inhalation of the vapors could cause symptoms ranging from nausea, headache, dizziness, fatigue, drowsiness and unconsciousness to organ damage, cancer and death. The supreme court stated that all the plaintiffs testified that they experienced contemporaneous or near-contemporaneous symptoms of eye irritation, nausea, nose and throat irritation and | ^difficulty breathing when exposed to the odors and fumes from the “slop oil” spill. It further noted that all the experts agreed that the plaintiffs’ reported symptoms were consistent with exposure to toxic chemicals contained in the “slop oil.” The supreme court rejected the defendant’s argument that scientific evidence was required to show exposure levels sufficient to cause the injuries alleged, and found the evidence presented, including lay and expert testimony, sufficiently supported the trial court’s determination that the plaintiffs’ injuries were caused by exposure to toxic chemicals. Id. at 322.
Likewise, upon review of the record in the present case, we do not find the trial court was manifestly erroneous in finding that Plaintiffs’ injuries were caused by the exposure to the chemicals released by Evans Harvey.
In several documents following the incident, Evans Harvey admitted that it accidentally released what it believed to be hydrogen chloride and hydrogen sulfide into the air for approximately ten minutes. The day after the incident, Evans Harvey wrote a memo to all affected employees attempting to explain what happened in the air emissions event of March 31, 1998 “that caused eye and throat irritation to one of our employees and many of the employees of our neighbors.” Evans Harvey admitted it was not 100% certain what happened but believed the emission resulted from changes it was making to its drum furnace in its reconditioning plant. ■ Evans Harvey further stated that it believed the “emission contained low ph material that had the effect of causing eye and throat irritation.”
Additionally, more than a week after the incident, Evans Harvey’s Director of Health Safety & Environmental Affairs wrote a letter to the Louisiana Department of Environmental Quality explaining that the emission, believed to contain traces of hydrogen chloride and hydrogen sulfide, impacted the industrial locations to the north of its facility due to the wind that day. The letter stated that |nas a result of the incident, over 100 employees of the neighboring companies experienced watery eyes and throat irritation and were seen by a doctor. In a follow-up letter to the Department of Environmental Quality, Evans Harvey estimated that the acid emitted during the ten minute incident contained 75% hydrogen chloride and 25% hydrogen sulfide.
' The plaintiffs, who were working in nearby yards, all testified that they immediately began suffering symptoms of burning/watering eyes, burning/itchy throat, and itchy skin when the yellowish cloud descended upon them. Additional symptoms suffered by some of the plaintiffs included headache, nausea, vomiting and difficulty breathing. The plaintiffs who were on the grounds of the nearby businesses at the time of the emission also reported burning eyes and throat and skin irritation upon seeing a yellowish mist in the area.
*251 Dr. Tucker, who examined over 100 people at the site, testified that these symptoms were consistent with a class of chemical exposure. He explained that it was not probable that all the people “all of a sudden just by random circumstances” started experiencing similar symptoms at the same time, but that it was more probable than not that they were exposed to something.
Plaintiffs’ expert toxicologist, Dr. Rick Irvin, testified that he reviewed the MSDS of the contents of the barrels being burned and reconditioned at the time of the chemical release. Dr. Irvin stated that the toxicological effects listed in the MSDS matched those being reported by people who were in the area. The MSDS indicated that the material in the barrels being burned was weatherstrip adhesive and contained the following toxic chemicals: hexane, toluene, calcium zinc resínate, cy-clohexane and methyl alcohol. The MSDS listed the health hazards of the listed chemicals as moderate eye irritation (redness, swelling, pain, tearing, and hazy vision) and mild skin irritation (redness, swelling, and itching)' upon contact |10and central nervous system depression (headache, dizziness, and drowsiness) and upper respiratory irritation (soreness of the nose and throat, coughing, and sneezing) upon inhalation. It further warned that the weatherstrip adhesive contains a chemical which can cause cancer. Dr. Irvin concluded that there was a definitive correlation between Plaintiffs’ symptoms and exposure to the chemicals listed in the MSDS.
We find this evidence provides a rational basis for the trial court’s conclusion that Plaintiffs’ injuries were caused by exposure to the chemical release. Similar to Arabie, all Plaintiffs suffered symptoms consistent with exposure to the listed chemicals on the MSDS sheet contemporaneously with the chemical release. Accordingly, we find no manifest error in the trial court’s finding of liability.

Damages

Defendants also challenge the trial court’s award of damages to each of the Plaintiffs as excessive.[2] Appellate review of general damage awards is limited. The trial court, as finder of fact, has great discretion in setting the amount of general damages. As long as the amount of general damages awarded is not clearly higher than reasonable minds could accept, it may not be disturbed on appeal. Absent an abuse of discretion by the trial court, appellate courts may not look to other cases as to the amount of damages. In re New Orleans Train Car Leakage Fire Litigation, 00-479 (La.App. 4 Cir. 6/27/01); 795 So.2d 364, 392.
Upon review of the record, we find no abuse of the trial court’s discretion in its award of damages. The trial court awarded five of the Plaintiffs (two workers — Jose Portillo and Jay Brugger; and three visitors — Susie Davis, Rose Harris and Lionel Bibbins) damages in the amount of $2,500.
InMr. Portillo testified that he had to remain outside in the yellow cloud for 45 minutes to finish a welding job. He immediately felt dizzy and had a bitter taste in his mouth. His throat and skin were itchy and his stomach hurt. Mr. Portillo was treated on site by Dr. Tucker and did not have any follow up medical care. He testified that he has a fear of developing cancer and suffers from shortness of breath, headaches and nightmares.
*252 Mr. Brugger was the OTECH yard foreman. As he was checking the yard, his eyes started burning and watering. He had a bitter taste in his mouth and experienced nausea. Mr. Brugger suffered from asthma and was immediately referred to the emergency room at West Jefferson Medical Center for lung irritation. He testified that he experienced breathing problems for a few days after the incident.
Ms. Davis was applying for a job at a nearby business when she began to smell something. She was told to leave the building and observed a yellowish mist outside. Her eyes, throat and skin began to bum. Although she did not treat with a doctor, she self-treated with Visine and lotion for her eye and skin irritation. She testified her symptoms, which included nausea, headaches, coughing and itchy skin, lasted 11/2 to two weeks.
Ms. Harris was with her daughter, Ms. Davis, when she experienced an awful taste in her mouth and her eyes began to bum. She stated her eyes •• and throat burned for one week, forcing her to close her lounge business. There was no evidence Ms. Harris treated with a doctor.
Mr. Bibbins was at C & C Marine applying for a job when he noticed a funny smell and observed a yellow cloud while in the parking lot. His eyes began to bum and he threw up. He self-treated with over-the-counter medication. He testified he suffered headaches and burning eyes, nose, and lungs off and on for a few weeks.
112These five Plaintiffs suffered immediate problems with their eyes, throat and skin and continued to suffer symptoms for up to two weeks after the exposure. We cannot say an award of $2,500 in general damages to each of these Plaintiffs was an abuse of discretion.
The trial court next awarded $5,000 each to Steve Grass and Donald Brown. The record shows that both Mr. Grass and Mr. Brown were outside when the chemical cloud descended in the area. They both had to stay outside in the cloud for some time to finish their jobs. Both immediately suffered burning eyes and throat, itchy skin, and nausea, which lasted for almost one week after the exposure. Mr. Grass additionally had difficulty breathing and Mr. Brown had difficulty eating and lost six to seven pounds because his taste buds were affected for a few weeks following the incident. Mr. Grass was initially treated on site and then went to West Jefferson Medical Center where he received an injection to alleviate his symptoms. Mr. Grass testified he continues to suffer with headaches, fatigue and sores on his arms, and fears contracting cancer. He testified that he was referred to a toxicologist, who wanted to run multiple tests, but Mr. Grass could not afford the tests because his health insurance would not pay for them. Mr. Brown also treated at the scene and received follow-up care with Dr. Tucker, who subsequently prescribed him medication. Upon review, we find no abuse of the trial court’s discretion in the general damages award to these two Plaintiffs.
The trial court awarded John Caminita $7,500 in general damages. Mr. Caminita, an employee at Dynamic Industries, drove into the paint yard on the morning of the incident. He saw a yellow cloud and immediately began suffering from watering and burning eyes and had difficulty breathing. He estimated he was in the cloud for 15 minutes. He was treated at West Jefferson Medical Center on the day of the incident and received followup care and testing over the next week | iswith Dr. Tucker. He suffered nausea for a few days, irritated eyes for a week and had difficulty sleeping for two to three *253 weeks. We cannot say the award to Mr. Caminita is clearly wrong.
Finally, the trial court awarded Line Leglue and Steve Rojas $13,500 each. Both Mr. Leglue and Mr. Rojas were employees of Dynamic Industries who were outside at the time of the incident and experienced burning and watery eyes. Mr. Leglue also suffered blurry vision, difficulty breathing, nausea and vomiting for weeks. He suffered a bitter taste in his mouth and could not taste for two to three months. Mr. Leglue was treated at West Jefferson Medical Center and received extensive follow-up care, incurring over $7,000 in medical expenses, and missed several days from work because of his symptoms. Mr. Rojas was treated on site for his burning eyes and nausea. He also received extensive follow-up care from neurologist for his headaches, a pulmonologist and psychologist, incurring over $6,000 in medical expenses. One year after the incident, he was diagnosed with toxic bronchitis and toxic sinusitis. Based on the record, we do not find the trial court abused its discretion in its award to these two Plaintiffs.
Defendants argue that the damage awards in this case are disproportionate compared to damage awards in similar cases; however, “[rjesorting to a comparison of prior awards is only appropriate after the reviewing court has concluded that an abuse of discretion has occurred.” Cone v. National Emergency Services, Inc., 99-934 (La.10/29/99); 747 So.2d 1085, 1089. Because we find no abuse of discretion in the trial court’s awards, a comparison of similar prior awards is inappropriate. See Jones v. Capitol Enterprise, 11-956 (La.App. 4 Cir. 5/9/12); 89 So.3d 474, 506.
| uDECREE
For the foregoing reasons, we affirm the trial court judgment finding Evans Harvey liable to Plaintiffs for damages resulting from the chemical gas leak. We also affirm the amount of damages' awarded to each of the ten Plaintiffs. Defendants, Evans Harvey and Lexington Ins. Co., are to bear the costs of this appeal.

AFFIRMED.

. These Plaintiffs included Lionel Bibbins, Donald Brown, Jay Brugger, John Caminita, Jr., Susie Davis, Steven Grass, Rose Harris, Line Leglue, Jose Portillo, and Steven Rojas. At the time of trial, John Caminita, III was substituted as party-plaintiff for John Camini-ta, Jr., who has passed away.

. Defendants do not challenge the amount of special damages awarded to Line Leglue and Steve Rojas. It is noted that these awards were based upon a stipulated amount.