PAMELA PARQUET, AS CURATRIX FOR
DERRON MICAH PARQUET

VERSUS

LOUISIANA HOMECARE OF LUTCHER,
L.L.C. AND EDDIE HEBERT

NO. 21-CA-451  C/W
21-CA-452

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE FORTIETH JUDICIAL DISTRICT COURT
PARISH OF ST. JOHN THE BAPTIST, STATE OF LOUISIANA
NO. 63,490 C/W 68,781, DIVISION "C"
HONORABLE J. STERLING SNOWDY, JUDGE PRESIDING

March 30, 2022

**SUSAN M. CHEHARDY**
**CHIEF JUDGE**

Panel composed of Judges Susan M. Chehardy,
Jude G. Gravois, and John J. Molaison, Jr.

**AFFIRMED**
    **SMC**
    **JGG**
    **JJM**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLANT,
PAMELA PARQUET, AS LEGAL SUCCESSOR FOR DERRON MICAH
PARQUET
    Robert S. Abdalian

COUNSEL FOR DEFENDANT/APPELLEE,
LOUISIANA HOMECARE OF LUTCHER, L.L.C. AND EDDIE J. HEBERT,
R.N.
    Peter E. Sperling
    Nairda T. Colon
    Halley S. Carter

**CHEHARDY, C.J.**

Plaintiff, Pamela Parquet, as legal successor to her deceased son, Derron Parquet, appeals the trial court's ruling granting summary judgment in favor of defendants, Louisiana HomeCare of Lutcher, L.L.C. d/b/a Ochsner Home Health of Lutcher ("OHH"), and Eddie J. Hebert, R.N. For the reasons that follow, we affirm the trial court's judgment.

FACTS AND PROCEDURAL HISTORY

Derron Parquet was diagnosed in February 2006 with meningoencephalitis, which rendered him mute and a quadriplegic. Because Derron, then 24 years old, was unable to care for himself in any way, his mother, Ms. Parquet, became his primary caregiver in June 2006; in July 2009, she was legally appointed his curatrix.

Constantly bedridden, Derron suffered multiple respiratory infections, urinary tract infections, and pressure wounds. In May 2011, Derron was discharged from St. James Parish Hospital with a referral for home health services to continue his care after a lengthy hospitalization. Ms. Parquet contracted with OHH to provide weekly nursing care for Derron. Nurse Hebert visited the Parquet home on May 4, 2011, to conduct an initial assessment, which was followed by weekly skilled nursing visits from either Nurse Hebert or Nurse Coleman through mid-June.

On June 15, 2011, Ms. Parquet bathed Derron and put him in clean, dry clothes in anticipation of another skilled nursing visit from OHH. Nurse Hebert arrived and attended to Derron while Ms. Parquet worked outside. When Ms. Parquet came inside, she alleges that Nurse Hebert was yelling "I have to wash my hands" and that Nurse Hebert was acting very strange. Ms. Parquet claims that she then entered her son's room and found him soaked with sweat and found feces in

his diaper.[1] Ms. Parquet also claims that her son's demeanor had changed.[2] According to Ms. Parquet, Nurse Hebert had been alone with Derron for approximately 30 minutes.

Later that day, Ms. Parquet attempted to call the OHH Director of Nursing, Tanya Morris, R.N., but Ms. Parquet did not speak to Nurse Morris until the next day, when Nurse Morris indicated that she would send someone other than Nurse Hebert for Derron's home health visits. Ms. Parquet ultimately severed the home-health contract with OHH.

On June 21, 2011, Nurse Hebert produced written documentation of his June 15 skilled nursing visit with Derron, which stated that he assessed the patient for wounds, PEG tube placement, and vital signs. Nurse Hebert indicated that Ms. Parquet had been mopping the floor, that she seemed irritated, and that she instructed him not to walk on the floor until it was dry. Later he assisted Ms. Parquet in changing Derron's shirt, which was wet. Nurse Hebert stated in the documentation that he felt Ms. Parquet was irritated and upset as he was leaving.

Ms. Parquet alleges that when she asked her son a few days later whether Nurse Hebert had molested him, Derron "blinked twice," which she says means "yes." Ms. Parquet also collected what she believed was evidence of the alleged sexual assault and turned it over to the St. John the Baptist Parish Sheriff's Office.[3]

_____

[1] Ms. Parquet contends that this was abnormal because it was not possible for Derron to have a bowel movement without a suppository, and she had not given him a suppository that day.

[2] Ms. Parquet claims she could communicate with her son by asking him yes-or-no questions and that he would answer by blinking once for "no" and twice for "yes." Ms. Parquet's deposition testimony indicated that when she entered Derron's room after Nurse Hebert's June 15, 2011 visit, in addition to finding him drenched in sweat, Derron's penis was outside the "male guard" of his adult diaper and erect on his stomach, which she claimed was "out of the ordinary in the extreme." Ms. Parquet testified that after the incident, Derron experienced a "marked and sudden change" in his affect and he was "despondent, less perky, sad, crying out during the night, breathing differently, and less communicative." Ms. Parquet claimed that between June 15, 2011 and June 18, 2011, "[w]hen he couldn't get my attention crying out loud, he'd lay quietly and just blink his eyes real fast and tears would just fall out of his eyes."

[3] Ms. Parquet explained that she gathered gauze with which she had cleaned Derron, as well as hair fragments and Vaseline found in the adult diaper and the diaper itself, plus photographs of this evidence, and turned it over to the St. John the Baptist Parish Sheriff's Office. There is no

According to Nurse Hebert's July 10, 2018 affidavit, the Sheriff's Office interviewed him and ultimately determined that no probable cause existed. Ms. Parquet also reported the alleged assault to the Louisiana Department of Health and Hospitals and the Louisiana State Board of Nursing. The State Board also did not pursue any discipline against Nurse Hebert or take any action against his license.[4]

Through counsel, Ms. Parquet, acting on behalf of her son, filed a Complaint with the Louisiana Patient's Compensation Fund in 2012 alleging that OHH was negligent in failing to properly conduct a background check on Nurse Hebert and failing to supervise its employees – claims that fall within the ambit of the Louisiana Medical Malpractice Act, La. R.S. 40:1231.1, *et seq*. Ms. Parquet, as curatrix for Derron, also filed a 2012 lawsuit in the St. John the Baptist Parish district court, asserting claims (i) against Nurse Hebert for the alleged June 15, 2011 sexual battery and assault on Derron, and for taking advantage of Derron's "paraplegic and mute state", and (ii) against OHH for (a) failure to conduct a background investigation of Nurse Hebert and failure to supervise (which claims had been submitted to the Medical Review Panel), and (b) *respondeat superior* liability for Nurse Hebert's intentional acts. The parties to the case entered into a consent judgment agreeing to stay the assault and battery claims against Nurse Hebert and the *respondeat superior* claims against OHH while the claims against OHH for negligently investigating Nurse Hebert's background and negligent supervision proceeded before the Medical Review Panel.

---

explanation in the record as to what happened to this evidence – only a letter stating that the Sheriff's Office found no cause to bring charges.

[4] The letter from the Louisiana State Board of Nursing stated: "Although the Board could take disciplinary action, it is believed that the best interests of the public would not be served by further action of this case, or by the Board filing charges against your license. Accordingly, the decision has been made to end this investigation unless additional information is received."

In September 2014, while the Medical Review Panel proceedings were pending, defendants deposed Ms. Parquet. On September 1, 2015, the Medical Review Panel rendered an opinion finding that the evidence did not support a determination that OHH failed to meet the applicable standard of care, concluding that OHH conducted an appropriate background investigation on Nurse Hebert and that OHH had properly supervised him.

Ms. Parquet, now appearing *pro se*, filed a second petition for damages in the district court for St. John the Baptist Parish on December 7, 2015, alleging that Nurse Hebert committed additional "intentional acts" and that OHH had *respondeat superior* liability for these acts. OHH filed an exception of prematurity arguing that none of the additional allegations that Ms. Parquet asserted had been reviewed by a medical review panel and therefore must be dismissed pursuant to La. R.S. 40:1231.8 and La. C.C.P. art. 933. Before the exception was heard, the second-filed lawsuit was transferred and consolidated with the original lawsuit filed in 2012. After Ms. Parquet failed to appear at the exception hearing, the trial court granted the exception of prematurity on the briefs.[5]

The parties also engaged in written discovery, with Ms. Parquet subpoenaing defendants' employment records and propounding interrogatories and requests for production of documents upon OHH in 2016 and 2017.[6] Nurse Hebert and OHH filed a motion for summary judgment on July 23, 2018, but the motion was

---

[5] Ms. Parquet evidently did not file another Complaint with the Patient's Compensation Fund seeking panel review of the additional allegations.

[6] The record before this Court was designated for appeal and thus does not include every filing in this matter, but it reveals that Ms. Parquet subpoenaed the employment records of Nurse Hebert and other employees at Louisiana HomeCare of Lutcher on March 21, 2016. In a December 16, 2016 Order, the trial court ordered defendants to produce the personnel file only of Nurse Eddie J. Hebert (after redacting all his personal identifying information). Although defendants failed to produce the file timely, it was eventually produced on a disk to Ms. Parquet in early April 2017; on April 20, 2017, the trial court ordered defendants to produce the requested file in paper form within 30 days. Ms. Parquet, acting *pro se*, submitted a First Set of Interrogatories and Request for Production of Documents to OHH on July 21, 2017 and a Revised First Set of Interrogatories and Request for Production of Document on August 21, 2017.

withdrawn after defendants discovered that Ms. Parquet was no longer curatrix to Derron, who had passed away on November 23, 2017. On November 9, 2018, the trial court issued an Order substituting Ms. Parquet, now in her capacity as Derron's legal successor, as plaintiff.[7] On January 18, 2019, Ms. Parquet contacted OHH requesting to schedule the deposition of OHH Director of Nursing Tanya Morris. After receiving no response to her deposition request, Ms. Parquet submitted two Requests for Admissions to defendants, at which time OHH sought an extension of time to answer. On February 28, 2019, OHH asked the trial court to reset defendants' motion for summary judgment. OHH ultimately submitted its response to Ms. Parquet's Requests for Admission on April 1, 2019. The trial court granted defendants' motion for summary judgment from the bench after an April 25, 2019 hearing. Ms. Parquet appeals that ruling, now represented by *pro bono* counsel.

## ANALYSIS

A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine issue of material fact. *Bell v. Parry*, 10-369 (La. App. 5 Cir. 11/23/10), 61 So.3d 1, 2. The summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of every action. La. C.C.P. art. 966 (A)(2). Under La. C.C.P. art. 966 (D)(1), the initial burden is on the mover to show that no genuine issue of material fact exists. If the moving party will not bear the burden of proof at trial, the moving party must point out only that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. *Id*. The nonmoving party must then produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of

_____

[7] It is undisputed that Ms. Parquet has never asserted claims against any of the defendants on her own behalf.

law. *Id*. If the nonmoving party fails to do so, summary judgment should be granted. *Babino v. Jefferson Transit*, 12-468 (La. App. 5 Cir. 2/21/13), 110 So.3d 1123, 1125.

"In ruling on a motion for summary judgment, the judge's role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. All doubts should be resolved in the non-moving party's favor." *Larson v. XYZ Ins. Co.*, 16-745 (La. 5/3/17), 226 So.3d 412, 416. A fact is material if it potentially ensures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. *Id*.

When a motion for summary judgment is made and supported as provided in La. C.C.P. art. 967, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in La. C.C.P. art. 967, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him. La. C.C.P. art. 967 (B); *Pelitire v. Rinker*, 18-501 (La. App. 5 Cir. 4/17/19), 270 So.3d 817, 827, *writ denied*, 19-793 (La. 9/17/19), 279 So. 3d 378. Conclusory allegations and unsupported speculation will not support the finding of a genuine issue of material fact; such allegations and speculation are insufficient to satisfy the opponent's burden of proof. *Trench v. Winn-Dixie Montgomery LLC*, 14-152 (La. App. 5 Cir. 9/24/14), 150 So.3d 472, 476.

Appellate courts review a judgment granting or denying a motion for summary judgment *de novo*. *Robinson v. Otis Condominium Ass'n, Inc.*, 20-359 (La. App. 5 Cir. 2/3/21), 315 So.3d 356, 361, *writ denied*, 21-343 (La. 4/27/21), 314 So.3d 837. Under this standard, we use the same criteria as the trial court in determining if summary judgment is appropriate: whether there is a genuine issue

of material fact and whether the mover is entitled to judgment as a matter of law. *Id.*

Courts must give litigants adequate time to conduct discovery before entertaining a motion for summary judgment. La. C.C.P. art. 966 (A)(3). There is no absolute right to delay action on a motion for summary judgment until discovery is complete, however. *Turner v. Bosley Med. Inst., Inc.*, 19-131 (La. App. 5 Cir. 10/16/19), 280 So.3d 326, 331. The only requirement is that the parties be given a fair opportunity to present their claims, and unless a plaintiff shows probable injustice, a suit should not be delayed pending discovery when it appears at an early stage that there is no genuine issue of material fact. *Id.* The mere contention of an opponent that he lacks sufficient information to defend a summary judgment motion and that he needs additional time to conduct discovery is insufficient to defeat the motion. *Id.* (citing *Williams v. A Day to Remember Invitations, L.L.C.*, 06-757 (La. App. 5 Cir. 3/13/07), 956 So.2d 30, 33).

When discovery is alleged to be incomplete, a trial court has the discretion either to hear the summary judgment motion or to grant a continuance to allow further discovery. *Roadrunner Transp. Systems v. Brown*, 17-0040 (La. App. 4 Cir. 5/10/17), 219 So.3d 1265, 1272 (citing *Simoneaux v. E.I. du Pont de Nemours and Co.*, 483 So.2d 908, 912 (La. 1986)). In this procedural context, a trial court's choice to either hear a motion for summary judgment or to grant a continuance is reviewed under an abuse-of-discretion standard. *Id.* "Although the language of article 966 does not grant a party the absolute right to delay a decision on a motion for summary judgment until all discovery is complete, the law does require that the parties be given a fair opportunity to present their case." *Id.* at 1273 (quoting *Leake & Andersson, LLP v. SIA Ins. Co. (Risk Retention Grp.), Ltd.*, 03-1600 (La. App. 4 Cir. 3/3/04), 868 So.2d 967, 969).

Ms. Parquet argues that the trial court erred in refusing to apply the factors enunciated in *Roadrunner*, *supra*, when determining whether summary judgment was ripe for resolution. These factors are: (i) whether the party was ready to go to trial; (ii) whether the party indicated what additional discovery was needed; (iii) whether the party took any steps to conduct additional discovery during the period between the filing of the motion and the hearing on it; (iv) whether the discovery issue was raised in the trial court before the entry of the summary judgment; and (v) whether discovery has been hindered by a circumstance beyond an opponent's control. *Roadrunner*, 219 So.3d at 1273-74; *see also Bourgeois v. Curry*, 05-211 (La. App. 4 Cir. 12/14/05), 921 So.2d 1001, 1008, *writ denied*, 06-208 (La. 4/24/06), 926 So.2d 549.

Referencing *Roadrunner*, Ms. Parquet argues that she was not ready for trial and that no trial date had been set. She contends that discovery was necessary to investigate defendants' defenses, to conduct additional written discovery, and to depose Tanya Morris, the OHH Director of Nursing with whom Ms. Parquet spoke after the alleged incident, and Nurse Hebert. Ms. Parquet further argues that defendants have created some of the delay through refusing to answer basic interrogatories and in refusing to schedule the deposition of Nurse Morris.

While we recognize that the passage of time alone may be an inappropriate basis for analyzing whether a summary judgment motion is premature, determining whether there has been an *opportunity* for adequate discovery is a permissible criterion for evaluating the timing of a summary judgment motion. La. C.C.P. art. 966 (A)(3); *see also Milton-Gustain v. Salvage Store, Inc.*, 19-1854 (La. 2/10/20), 289 So.3d 48. Ms. Parquet has had ample opportunity to conduct discovery. Indeed, Ms. Parquet propounded formal written discovery requests in 2016 and 2017, more than five years ago. This case has been pending for nearly 10 years, and more than six years have passed since the Medical Review Panel determined

that OHH did not violate the standard of care in conducting its background investigation of Nurse Hebert or in supervising him. The St. John the Baptist Parish Sheriff's Office interviewed Nurse Hebert and the Board of Nursing conducted an investigation, but neither investigation appears to have unearthed evidence in support of plaintiff's allegations.

Over the course of this litigation, the trial court agreed to continue several hearings in response to Ms. Parquet's requests, based on the significant time constraints imposed upon her as her son's full-time caregiver or because she had indicated that she was attempting to locate new counsel to represent her son's interests. Ms. Parquet evidently did not locate new counsel until filing this appeal, however. Ms. Parquet has never deposed the principal defendant, Nurse Hebert, nor does the record suggest that she has even sought to depose him. While Ms. Parquet argued to the trial court that she should have been given time to depose OHH's Director of Nursing, Tanya Morris, and to conduct additional (unspecified) discovery, we find that deposing Nurse Morris would at best relate to Ms. Parquet's secondary allegations of *respondeat superior* liability and the negligence claims against OHH rather than the principal allegations against Nurse Hebert for the alleged assault.[8] In short, while we are sympathetic to the significant difficulties Ms. Parquet has experienced while pursuing this case, including OHH's substantially delayed responses to some of Ms. Parquet's discovery requests, we cannot say that the trial court abused its discretion in refusing to permit additional time for Ms. Parquet to conduct additional discovery before deciding defendants' motion for summary judgment. There is no absolute right to delay action on a motion for summary judgment until discovery is complete. *Turner*, 280 So.3d at 331.

---

[8] In her brief to this Court at p. 25, Ms. Parquet concedes that "[t]he essence of this action is the assault and battery on Derron. The other claims branch off this claim and are dependent on this tort claim."

Upon our *de novo* review of the record, we also find no error in the trial court's decision to grant defendants' motion for summary judgment on the basis that plaintiff will not be able to meet her burden of proof at trial.

The intentional tort of battery is a "harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff to suffer such a contact." *Landry v. Bellanger*, 02-1443 (La. 5/20/03), 851 So.2d 943, 949. An assault is the threat of such harmful or offensive contact. *Pelitire*, 270 So.3d at 833. La. C.C.P. art. 967 (A) requires that affidavits submitted in opposition to summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." *See Brungardt v. Summitt*, 08-577 (La. App. 4 Cir. 4/8/09), 7 So.3d 879, 883, *writ denied*, 09-1266 (La. 9/25/09), 18 So.3d 77.

With regard to the allegations of sexual assault and battery, Ms. Parquet's affidavit and her deposition testimony, which relay her observations of Derron on and after June 15, 2011, provide only circumstantial evidence that in this case is insufficient to defeat summary judgment under La. C.C.P. art. 967 (A). Circumstantial evidence is evidence of a fact or set of facts from which the existence of the fact to be determined may reasonably be inferred. *Hanks v. Entergy Corp.*, 06-477 (La. 12/18/06), 944 So.2d 564, 578. When a party in a civil matter relies upon circumstantial evidence in order to prove her case by a preponderance of evidence, that evidence, taken as a whole, must exclude every other reasonable hypothesis with a fair amount of certainty, but it need not negate all other possible causes. *Brown v. Evans Harvey Corp.*, 14-590 (La. App. 5 Cir. 4/15/15), 170 So.3d 244, 249; *Lacey v. Louisiana Coca-Cola Bottling Co., Ltd.*, 452 So.2d 162 (La. 1984).

Ms. Parquet admitted in her deposition that she did not witness any alleged assault, and no additional evidence, such as physical evidence or expert medical testimony, is found in the record to establish that other possible causes of Derron's alleged condition after Nurse Hebert's June 15, 2011 visit may be excluded.

Moreover, conclusory allegations and unsupported speculation will not support the finding of a genuine issue of material fact. *Trench*, 150 So.3d at 476. Ms. Parquet's testimony that days after the incident, Derron admitted to her (by blinking twice to answer "yes") that he was assaulted is inadmissible hearsay. La. C.E. art. 801 (C). Without any admissible evidence to corroborate her allegations and conclusory statements—and without additional evidence to exclude other reasonable hypotheses to account for Derron's condition—Ms. Parquet fails to create a genuine issue of material fact as to whether an intentional tort occurred.[9]

The trial court also properly dismissed the secondary allegations against OHH for *respondeat superior* liability for the actions of Nurse Hebert. Under La. Civ. Code art. 2320, an employer may be held liable for a tort committed by his employee if the employee was acting within the course and scope of his employment at the time of the alleged act. *Baumeister v. Plunkett*, 95-2270 (La. 5/21/96), 673 So.2d 994, 996. Ms. Parquet's ability to prove that OHH is vicariously liable for Nurse Hebert's allegedly tortious acts decidedly depends upon her success in proving that Nurse Hebert committed these alleged acts. *See Pelitire*, 270 So.3d at 834-35 (noting that plaintiff's ability to recover damages for employer's vicarious liability or for employer's direct negligence hinges on

---

[9] Counsel for Ms. Parquet conceded at oral argument that there is no medical evidence in the record to support the allegations of sexual assault. Nor is there any indication in the record that the physical evidence Ms. Parquet turned over to the St. John the Baptist Parish Sheriff's Office tended to prove sexual assault or battery. And in his July 10, 2018 affidavit, Nurse Hebert states: "At no time did I commit a sexual assault or battery upon Derron Parquet nor did I commit any other intentional or fraudulent acts, as alleged by Ms. Pamela Parquet." While this statement is entirely self-serving, the record contains no admissible evidence sufficient to refute this statement in order to create a genuine issue of material fact for trial.

plaintiff's ability to prove that employee committed the alleged sexual assault and battery). Finding the record devoid of evidence sufficient to prove the intentional tort claims against Nurse Hebert, the vicarious liability claims against OHH must fall as well.

Lastly, no evidence has been offered to prove that OHH failed to supervise Nurse Hebert or that it failed to conduct a proper background investigation. These allegations were reviewed by the Medical Review Panel, which found no breach of the standard of care. OHH submitted evidence that a background check was conducted, and Ms. Parquet has produced no evidence to show that OHH's background investigation fell below the applicable standard of care for such investigations or that a more detailed investigation would have raised a red flag.[10]

### DECREE

The trial court's judgment entered in favor of defendants, Eddie J. Hebert and Louisiana HomeCare of Lutcher, L.L.C. d/b/a Ochsner Home Health of Lutcher, dismissing the claims of Pamela Parquet, as legal successor to her deceased son, Derron Parquet, is affirmed.

**AFFIRMED**

---

[10] Although we address the merits of the allegations against OHH, we note that in her counseled brief to this Court, Ms. Parquet failed to assign as error the trial court's dismissal of the secondary claims for *respondeat superior* liability and for OHH's negligence. Such issues therefore may be considered abandoned pursuant to Uniform Rules – Courts of Appeal, Rule 2-12.4 (B)(4).

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES



**FIFTH CIRCUIT**

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

CURTIS B. PURSELL
CLERK OF COURT

NANCY F. VEGA
CHIEF DEPUTY CLERK

SUSAN S. BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **MARCH 30, 2022** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 21-CA-451
### C/W 21-CA-452

**E-NOTIFIED**
40TH DISTRICT COURT (CLERK)
HONORABLE J. STERLING SNOWDY (DISTRICT JUDGE)
CHARLES S. LONG (APPELLANT)       ROBERT S. ABDALIAN (APPELLANT)       HALLEY S. CARTER (APPELLEE)
PETER E. SPERLING (APPELLEE)

**MAILED**
NAIRDA T. COLON (APPELLEE)
ATTORNEY AT LAW
1100 POYDRAS STREET
SUITE 3700
NEW ORLEANS, LA 70163